**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1. LYNNETTE MASON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. CIV-2020-1217-D |
| 1.  STATE FARM MUTUAL | ) | |
| AUTOMOBILE INSURANCE | ) | *Honorable Timothy D. DeGiusti* |
| CO., d/b/a STATE FARM | ) | |
| INSURANCE CO., | ) | |
| a Foreign For-Profit Entity, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**DEFENDANT STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY'S SECOND MOTION FOR**
**SUMMARY JUDGMENT ON PLAINTIFF'S**
**BREACH OF CONTRACT AND "BAD FAITH" CLAIMS**
**AND**
**BRIEF IN SUPPORT[1]**

_____

August 19, 2022

**WILSON, CAIN & ACQUAVIVA**
300 Northwest 13th Street, Suite 100
Oklahoma City, OK  73103
Telephone:  (405) 236-2600
Facsimile:   (405) 231-0062

Joseph T. Acquaviva, Jr., OBA #11743
JTAcqua@wcalaw.com
Elizabeth A. Snowden, OBA #22721
beths@wcalaw.com

**ATTORNEYS FOR DEFENDANT,**
**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY**

_____

[1] Filed with leave of court. [Doc. No. 20].

## <u>TABLE OF CONTENTS AND AUTHORITIES</u>

**TABLE OF CONTENTS AND AUTHORITIES** …………………….…….….. ii - x

**SECOND MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFF'S BREACH OF CONTRACT
AND "BAD FAITH" CLAIMS** …..………………………………………... 1 - 30

Federal Rules of Civil Procedure 56 …..……………………….................... 1

Local Civil Rule  7.1 …..……………………........................................ 1

**BRIEF IN SUPPORT** …..…………………….................................... 1 - 31

**STATEMENT OF THE CASE AND SUMMARY ARGUMENT** ……………. 1 - 3

Ex. 1       October 3, 2019 Judgment entered on jury's verdict …………….………. 2

Ex. 2       HARRISON-03720, November 10, 2015 letter
            from Gass to State Farm …………………………………………….. 1 - 2

Ex. 3       Gass Deposition, May 6, 2022,
            pgs. 13:10-12, 20:18 - 21:2 and 51:16 - 52:3 ……………….………... 1, 3

Ex. 4       Deposition of Plaintiff, May 6, 2022,
            pgs. 73:14 - 74:2, 75:15-23 and 85:1-11 ………………………........ 1

Ex. 5       HARRISON-01790, Harrison's June 3, 2018
            Responses to Mason's Requests for Admissions ………………………. 2

Ex. 6       Harrison Deposition, September 10, 2018,
            pg. 13:1-12 …………………….………………………….................... 2

Ex. 7       SF-00641, June 18, 2020 letter from Gass
            to State Farm ………...……………………………………….……… 3

Ex. 8       L. MASON 00018-00020, July 27, 2020 letter
            from State Farm to Gass ………………………………….……….... 3

Ex. 9       Deposition of Gerard "Jerry" Pignato, August 5, 2022,
            pgs. 67:17 - 68:3 and 113:24 - 114:11 ……………………………… 3

36 O.S. § 3636 ……………………………………………………..……... 2

*Boyer v. Oklahoma Farm Bureau Mut. Ins. Co.*,
1995 OK CIV APP 102, 902 P.2d 83 …………...…………………………….…... 2

*Gates v. Eller*, 2001 OK 38, 22 P.3d 1215, 1218-19 ……………………………….. 3

*Timberlake Const. Co. v. U.S.F. & G.*,
71 F.3d 335, 345 (10th Cir. 1995) …………………………………..………………… 3

**STATEMENT OF UNCONTROVERTED MATERIAL FACTS** …………….. 4 - 12

Ex. 3         Gass Deposition, May 6, 2022,
              pgs. 72:17 - 21 and 72:22 - 73:4 ……………………….................... 7

Ex. 5         HARRISON-01790, Harrison's Responses to
              Mason's Requests for Admissions ……………..………….................... 6

Ex. 6         Deposition of Lyndee Harrison, September 10,
              2018, pg. 13:1-7 ………………………………………………….... 6

Ex. 7         SF-00641, June 18, 2020 letter from Gass
              to State Farm ………...………………………………………….......… 6

Ex. 8         L. MASON 00018-00020, July 27, 2020 letter
              from State Farm to Gass ……………….………………….……..….... 7

Ex. 9         Deposition of Gerard "Jerry" Pignato, August 5, 2022,
              pgs. 37:25 - 38:10 and 80:3-13…………………………………........... 5, 7

Ex. 10        HARRISON-01187 - HARRISON-01191,
              November 5, 2015 Loss Report ……………………………………… 4

Ex. 11        Official Oklahoma Traffic Collision Report
              HARRISON-03892 - HARRISON-03896 …………………………..… 4

Ex. 12        HARRISON-00116, HARRISON-00122,
              HARRISON-00142 and HARRISON-00144 ………………….……… 4 - 6

Ex. 13        SF-00049 ……………………………………………………….…... 5

**Ex. 14**  SF-00237 - SF-00239, January 3, 2017 letter from
Gass to State Farm ……………………………………..…….. 5

**Ex. 15**  SF-00201, January 11, 2017 letter from
State Farm to Gass ………………………………………..…… 5

**Ex. 16**  September 25, 2017 Petition filed in *Mason I* …………………………… 5

**Ex. 17**  Plaintiff's Responses to State Farm's
Requests for Admission Nos. 1 and 3 …………………………………... 5

**Plaintiff's *Consistent* Contentions Regarding the
Accident and Injuries/Damages** ……………………………………......... 7 - 10

**Ex. 3**  Gass Deposition, May 6, 2022,
pgs. 51:16 - 52:3 ………………………………….......................... 10

**Ex. 4**  Deposition of Plaintiff, May 6, 2022,
pgs. 11:6-10, 39:6-8, 41:7-17, 45:11-14,
49:3-11, 58:15-19, 75:18-23, 80:20 - 81:9,
139:1-3 and 157:7-12 ……………………………………………… 9 - 10

**Ex. 9**  Deposition of Gerard "Jerry" Pignato, August 5, 2022,
pgs. 67:17 - 68:3 ……………………………….…………………............ 10

**Ex. 11**  Official Oklahoma Traffic Collision Report,
HARRISON-03892 - HARRISON-03896 ………………………………... 7

**Ex. 17**  Plaintiff's Responses to State Farm's Requests for
Admission Nos. 9, 10, 11, 12, 13, 14 and 18 [sic] …………………… 8 - 9

**Ex. 18**  Plaintiff's Answers to Defendant's First Interrogatory
Nos. 2, 4, 20 and 21, in *Mason I* ……………………….................... 7 - 8

**Ex. 19**  Deposition of Plaintiff, May 1, 2018,
pgs. 16:24 - 17:8 and 18:3-12 ……………………………………...... 8 - 9

**Ex. 20**  Proposed Stipulations …………………………………………... 9

**Ex. 21**  Pretrial Conference Order filed in *Mason I* ………………………..…… 9

**Ex. 22**  Trial Transcript, September 23, 2019,
pgs. 62:25 - 63:10 ……………………………………………… 9

**Harrison's *Inconsistent* Versions of the Accident** …………………………………....10

**Sergeant Trevor Troxell's Testimony Regarding
His Investigation of the Accident** ……………………………..………..……..... 11

**Ex. 23**    Trial Testimony of Sergeant Trevor Troxell,
September 23, 2019, pgs. 53:12-22 and 54:15-20 ………………….…... 11

***Mason I* - Trial, Jury Instructions and Verdict** …………..……………………...11 - 12

**Ex. 1**    Journal Entry of Judgment filed in *Mason I* ……………………….…... 12

**Ex. 9**    Deposition of Gerard "Jerry" Pignato, August 5, 2022,
pg. 31:4-12 ……………………………………………..……………… 12

**Ex. 17**    Plaintiff's Responses to Requests for Admission
Nos. 5, 25 [sic] and 26 [sic]  ………………………………………... 11 - 12

**Ex. 24**    Jury Instruction Nos. 4, 6, 12, 17, 19 and 20 …………………..… 11 - 12

**Ex. 25**    Trial Transcript, September 24, 2019,
pgs. 57:12 - 58:8 …………………………………………………..…... 12

**STANDARD FOR GRANTING SUMMARY JUDGMENT** ………………… 13 - 14

Federal Rules of Civil Procedure 56, 56(c) …………………………………….. 13

*Manders v. State of Okla. ex rel. Dept. of Mental Health,*
875 F.2d 263, 264 (10th Cir. 1989) ……………………………………..…….. 13

*Committee for First Amendment v. Campbell,*
962 F.2d 1517, 1521 (10th Cir. 1992) …………………………………..…….. 13

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 249, 251-252 (1986) ……………………………………….….... 13

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ……………………..……... 13

*Thomas v. Wichita Coca-Cola Bottling Co.,*
968 F.2d 1022 (10th Cir. 1992), *cert. denied,*
506 U.S. 1013 (1992) ………………………………………………….……….. 13

*Committee for First Amendments v. Campbell*,
962 F.2d 1517, 1521 (10th Cir. 1992) ……………………………………………… 13

*Applied Genetics Intern., Inc. v. First Affiliated*
*Securities, Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) ………………………………….. 13

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574, 586 (1986) ………………………………………………………...…… 13

*R.G. Group, Inc. v. Horn & Hardart Co.*,
751 F.2d 69, 77 (2d Cir. 1984) ……………………………………………..……... 14

**ARGUMENT AND AUTHORITIES** ……………………………….…….….... 14 - 30

   **A.    PLAINTIFF CANNOT ESTABLISH THE**
   **REQUIRED ELEMENTS FOR PAYMENT**
   **UNDER EITHER THE UNINSURED OR**
   **UNDERINSURED MOTORIST COVERAGE.** …………………… 14 - 18

36 O.S. § 3636(B) ………………………………….…………………….……..…... 14

*Porter v. State Farm Mut. Auto. Ins. Co.*,
231 P.3d 691, 693 (Okla. Civ. App. 2010) ………………………….…….……... 14

*Gates v. Eller*, 2001 OK 38, ¶12,
22 P.3d 1215, 1219 (Okla. 2001) ……………………………….…..……………. 14

*Vickers v. Progressive Northern Ins. Co.*,
353 F.Supp.3d 1153, 1166 ………………………………………….…….……….. 15

*Boyer v. Oklahoma Farm Bureau Mut. Ins. Co.*,
1995 OK CIV APP 102, 902 P.2d 83, 86 ……………………………….…..…….. 15

   **1.    Because Plaintiff is Not Legally Entitled to Recover**
   **Against Harrison, Plaintiff Does Not Have a Valid**
   ***Underinsured* Motorist Claim.** ………………………….…….……… 15 -16

**Ex. 9**      Deposition of Gerard "Jerry" Pignato, August 5, 2022,
              pg. 88:9-24 ……………………………………..……………..…... 16

**Ex. 22**     Trial Transcript of September 23, 2019,
              pgs. 62:25 - 63:10 …………………….…………….…….…... 15 - 16

    **2. Plaintiff is Not Legally Entitled to Recover**
       **Against a Phantom Driver; Therefore, Plaintiff**
       **Does Not Have a Valid *Uninsured* Motorist Claim.** ………………….. 16 - 18

**Ex. 4**       Deposition of Plaintiff, May 6, 2022,
            pgs. 85:6-11, 139:1-3 …………………….…….……..……….. 16 - 17

**Ex. 26**     SF-00803 - SF-00845, at SF-00830, Insurance Policy …………………. 17

*Mayer v. State Farm Mut. Auto. Ins. Co.,*
1997 OK 67, 944 P.2d 288, 289 ………………………………………….….... 17

*Rose v. State Farm Mut. Auto. Ins. Co.,*
1991 OK CIV APP 124, 821 P.2d 1077, 1078 …………………….………... 17

*Uptegraft v. Home Ins. Co.,* 1983 OK 41, 662 P.2d 681 …………….………..……... 18

*Barfield v. Barfield,* 1987 OK 72, 1112, 742 P.2d 1107 ………………………..… 18

  **B.**     **AS A MATTER OF LAW, STATE FARM DID NOT**
        **BREACH ITS DUTY OF GOOD FAITH AND FAIR**
        **DEALING WITH PLAINTIFF.** …………………….….……….. 18 - 30

    **1. Plaintiff Cannot Establish the "Essential Elements"**
       **of a Bad Faith Claim.** ……………….……….……..……..……… 18 - 20

Oklahoma Uniform Jury Instruction-3d No. 22.2 …..…………………….……..… 20

*Badillo v. Mid Century Ins. Co.,*
2005 OK 48, 121 P.3d 1080, 1093 ……………………….………..……….. 18 - 19

*Ball v. Wilshire Ins. Co.,* 2009 OK 38, 724, 221 P.3d 717 ……………………….. 19

*Bailey v. Farmers Ins. Co., Inc.,* 2006 OK CIV APP 85,
137 P.3d 1260, 1264 ……………………………….…….…………….…... 19

*Oulds v. Principal Mut. Life. Ins. Co.,* 6 F.3d 1431, 1437
(10th Cir. 1993) …………………………….……..……………………..….. 19

*Hays v. Jackson Nat'l Life Ins. Co.,*
105 F.3d 583, 586 (10th Cir. 1997) …………………………….……..……... 19

*Claborn v. Washington National Ins. Co.*,
1996 OK 8, 910 P.2d 1046, 1051 …………………………………………... 19 - 20

*Ballinger v. Security Conn. Life. Ins. Co.*,
1993 OK 69, 862 P.2d 68, 70 ……………….…………………..…………………… 20

*Goodwin v. Old Republic Ins. Co.*,
1992 OK 34, 828 P.2d 431, 436 ……………….……………..…………..……… 20

*Whitmire v. Mid-Continent Cas. Co.*,
1996 OK CIV APP 59, 877 P.2d 620, 622 ……………….………….…..……… 20

*Conti v. Republic Underwriters Ins. Co.*,
1989 OK 128, 782 P.2d 1357, 1360 ……………….………………..……….…... 20

*McCorkle v. Great Atlantic Ins. Co.*,
1981 OK 128, 637 P.2d at 587 ……………….………….……..……..……..…. 20

**2.  As a Matter of Law, Plaintiff Cannot Prevail on
Her Bad Faith Claim Because She Failed to
Establish a Breach of the Underlying Contract.** …………………... 20 - 23

**Ex. 27**     *Curtis v. Progressive Northern Ins. Co.*, 2022
WL 109003, at *6 (W.D. Okla., January 11, 2022) ……………………… 21

**Ex. 28**     *Morrison v. Stonebridge Life Ins. Co.*, 2015
WL 137261, at *7 (W.D. Okla., January 9, 2015) ………………………… 22

*Davis v. GHS Health Maintenance Org., Inc.*,
2001 OK 3, 22 P.3d 1204, 1210 ……………….……………………...…………… 21

*Vining v. Enterprise Financial Group*,
148 F.3d 1206 (10th Cir. 1998) ……………….………………..…………….…... 21

*Davis v. Fed. Ins. Co.*, 382 F.Supp.3d
1189 (W.D. Okla. 2019) ……………….…………………..…………….…..….... 21

*Edens v. The Netherlands Ins. Co.*,
834 F.3d 1116 (10th Cir. 2016) ……………….…………………..…………..……… 22

*Ball v. Wilshire Ins. Co.*, 2009 OK 38, 221 P.3d 717, 724 …………………………… 22 - 23

*McCarty v. First of Georgia Ins. Co.*,
713 F.2d 609, 612 (10th Cir. 1983) ……………………………………..…………..….. 23

*Christian v. American Home Assurance Co.*,
1977 OK 141, 577 P.2d 899, 905 ………………………………….……..……………... 23

      **3.  At the Time(s) Performance Was Requested by A
          Plaintiff, There Was a Legitimate Dispute as to
          Whether Plaintiff's Claim Was Covered by the Policy.** …………... 23 - 26

**Ex. 9**        Deposition of Gerard "Jerry" Pignato, August 5, 2022,
           pg. 44:12-19 …………………….……...…………..……………………….. 25

47 O.S. § 11-310(a) ……………………………….……………………………..……… 24

*Buzzard v. Farmers Ins. Co., Inc.*,
1991 OK 127, 824 P.2d 1105, 1109 …………………………….……..…………... 23

*Oulds v. Principal Mut. Life Ins. Co.*,
6 F.3d 1431, 1436, 1442 (10th Cir. 1993) ……………………….……..…….…... 23 - 24

*Bannister v. State Farm Mut. Auto. Ins. Co.*,
692 F.3d 1117, 1128, 1131 (10th Cir. 2012) ……………………….…………… 24 - 25

      **4.  State Farm's Investigation was Reasonable and
          Adequate. Plaintiff has Failed to Show Material
          Facts Were Overlooked or a More Thorough
          Investigation Would Have Produced Relevant
          Evidence to Delegitimize State Farm's Liability
          Decision.** ……………………….……….……………..……………… 26 - 28

**Ex. 9**        Deposition of Gerard "Jerry" Pignato, August 5, 2022,
           pg. 115:18-21 ……………………………………..………..……………… 28

*Timberlake Const. Co. v. U.S.F. & G.*,
71 F.3d 335, 345 (10th Cir. 1995) ……………………………….……..……..…... 26

*Sims v. Great American Life Ins. Co.*,
469 F.3d 870, 893 n.18 (10th Cir. 2006) ……………………….…………..……… 26

*Bannister v. State Farm Mut. Auto. Ins. Co.*,
692 F.3d 1117, 1131-1132 (10th Cir. 2012) …………………….……….……….. 27 - 28

*Harris v. Progressive Direct insurance Company*,
740 Fed.Appx. 900, 917 (10th Cir. 2018) …………………….……….……..…….... 27

**5.  State Farm's Use of a Single Adjuster Does Not
      Establish Bad Faith.** …………………………………………... 28 -  30

**Ex. 3**       Gass Deposition, May 6, 2022, pg. 86:2-7 …………….………………… 30

**Ex. 9**       Deposition of Gerard "Jerry" Pignato, August 5, 2022,
                Pgs. 47:12-15 and 54:13 - 56:17 …..……….……..……………… 29 - 30

*Garnett v. Gov't Employees. Ins. Co.*,
2008 OK 43, 186 P.3d 935 ……………….……….……..…………..…………. 29

*Conti v. Republic Underwriters Ins. Co.*,
1989 OK 128, 782 P.2d 1357, 1360 ………………….……….……..…………..… 29

*Duensing v. State Farm Fire & Cas. Co.*,
2006 OK CIV APP 15, 131 P.3d 127, 138 ……………….……….……..…………. 29

*Skinner v. John Deere Insurance Co.*,
2000 OK 18, 998 P.2d 1219 …..……….……….……….……..………..……... 29

**6.  State Farm's Pending *Motion to Exclude* [Doc. 55].** ……………….. 30

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) …………………….……………..……….………..……… 30

*Kumho Tire Co., Ltd. v. Patrick Carmichael*,
526 U.S. 137 (1999) ………………….…….……..…………….……….……... 30

**C.       CONCLUSION** …………….……….……..…………..…………….. 30

**CERTIFICATE OF MAILING** …………………….……………………… 31

COMES NOW the Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), and pursuant to Fed.R.Civ.P. 56, and LCvR 7.1 submits its Second Motion for Summary Judgment, and Brief in Support.

## BRIEF IN SUPPORT

## STATEMENT OF THE CASE AND SUMMARY ARGUMENT

This is the second lawsuit filed by Lynnette Mason ("Mason") as a result of a November 4, 2015 accident in which she was rearended by Lyndee Harrison ("Harrison"). Both Mason and Harrison were State Farm insureds.

Mason questions the reasonableness of State Farm's decision that her accident was caused by Harrison and not a phantom vehicle. Mason did not allege her accident was caused by a phantom vehicle until June 18, 2020, more than four years after the accident and almost one year after the jury in her first lawsuit returned a verdict in favor of Harrison and against Mason.[2] In this case, both Mason and her attorney in *Mason I*, Andy Gass ("Gass"), testified they do not believe Harrison's story about a phantom vehicle.[3]

Within days of the accident, Gass presented a bodily injury liability claim against Harrison.[4] *See* November 10, 2015 letter from Gass to State Farm, **Ex. 2**, Harrison-03720.

---

[2] On September 25, 2017, Mason filed suit against Harrison in the District Court of Cleveland County, State of Oklahoma (*Mason v. Harrison*, No. CJ-2017-1184 ("*Mason I*")).

[3] *See* **Ex. 3**, attorney Andy Gass' May 6, 2022 deposition in which he testified he does not believe a phantom vehicle was involved and agrees: (1) there is no physical evidence of a third vehicle; and (2) that Ms. Harrison "created" the third vehicle. Pgs. 13:10-12, and 20:18-21:2.

*See also* **Ex. 4**, Lynnette Mason's May 6, 2022 deposition in which she testified she does not believe a phantom vehicle was involved. Pgs. 73:14-74:2, 75:15-23, and 85:1-11.

[4] Harrison's applicable auto bodily injury liability limits were $250,000/$500,000. *See* **Ex. 3**, Gass' May 6, 2022 deposition, pgs. 51:16-52:3.

Mason's bodily injury claim did not settle. On November 14, 2017, Mason sued Harrison ("*Mason I"*). At trial Mason was represented by attorneys Andy Gass and Rex Travis. Harrison was represented by attorney Mike Chitwood, a member of State Farm's Staff Counsel. Mason alleged the accident and her injuries were caused solely by Harrison's negligence. In September 2019, *Mason I* went to trial. The jury returned a verdict in favor of Harrison and against Mason. On October 3, 2019, Judgment was entered on the jury's verdict. *See* **Ex. 1**. Mason did not file post-trial motions or an appeal. As a matter of law, ***Plaintiff is not legally entitled to collect any amount from Harrison***. Therefore, ***Harrison is not "underinsured"***. ***Plaintiff is not entitled to an underinsured motorist payment***. *See* 36 O.S. § 3636 and *Boyer v. Oklahoma Farm Bureau Mut. Ins. Co.*, 1995 OK CIV APP 102, 902 P.2d 83.

Before the *Mason I* lawsuit was filed, Harrison gave one version of the "facts" to the investigating officer and three different versions to State Farm. *See* Uncontroverted Material Facts ("UMF") Nos. 2, 3, 4, 5, 6, 8 and 12, *infra*. Harrison gave additional versions of the accident after *Mason I* was filed. In her June 3, 2018 Responses to Requests for Admissions ("RFA"), ***Harrison admitted she was the sole cause of the accident***. *See* UMF No. 14, *infra*, and Harrison's Responses to Mason's RFA, **Ex. 5**. In her September 2018 deposition, ***Harrison recanted her Admissions*** and testified that a car traveling in the right lane cut in front of Mason causing Mason to stop suddenly. *See* UMF No. 15, *infra*, and September 10, 2018 Harrison deposition, pgs. 13:1-12, **Ex. 6**.

In contrast to Harrison's changing stories, Mason consistently stated and ultimately testified that she was stopped for several seconds when she was rearended by Harrison.

Mason and Gass both testified they do not believe Harrison's story about a third or phantom vehicle causing the accident.[5]

On June 18, 2020, Gass presented an UM claim. He claimed "the explanation for the defense verdict was 'the driver of the third vehicle' referred to by Lyndee Harrison." (*See* UMF No. 17, *infra*, and **Ex. 7**, SF-00641) Gass presented nothing to support his "explanation". State Farm responded on July 27, 2020. *See* UMF No. 19, *infra*, and **Ex. 8**, L. MASON 00018-00020. Based on the information State Farm had already received, reviewed and considered, which included Mason denying the involvement of a phantom vehicle,[6] as well as Harrison's inconsistent stories, and because Gass did not provide any information to support the new UM claim against the phantom vehicle, State Farm denied the claim. *See* UMF No. 18, *infra*, and **Ex. 8**.

Plaintiff has the burden of proving her injuries were caused by an uninsured tortfeasor (in this case, the phantom driver/vehicle). *Gates v. Eller*, 2001 OK 38, 22 P.3d 1215, 1218-19. Plaintiff also has the burden of showing that: (1) material facts were overlooked; or (2) a more thorough investigation would have produced relevant information.[7] Plaintiff has provided nothing.

Plaintiff's breach of contract and bad faith claims fail as a matter of law.

---

[5] *See* fn. 3, *supra*.

[6] *See* fn. 3, *supra*, *see also* **Ex. 9**, Deposition of Gerard "Jerry" Pignato, pgs. 67:17-68:3 (Pignato testified there is no physical evidence or other witness statement (aside from Harrison's inconsistent statements) supporting the claim that a phantom driver caused or contributed to the accident), and pgs. 113:24-114:11 (agreeing that Mason's testimony is inconsistent with Harrison's phantom vehicle story).

[7] *See, e.g., Timberlake Const. Co. v. U.S.F. & G.*, 71 F.3d 335, 345 (10th Cir. 1995).

## STATEMENT OF UNCONTROVERTED MATERIAL FACTS

1.  On November 4, 2015, Plaintiff and Harrison were involved in an accident in Moore, Oklahoma. *See* Petition [Doc. No. 1-2].

2.  On November 5, 2015, one day after the accident, State Farm spoke with Harrison and obtained a Loss Report in which she denied the involvement of a phantom vehicle.

Indicate if a Phantom Vehicle is Involved    **No**

*See* (**Ex. 10**, HARRISON-01187 - HARRISON-01191, at HARRISON-01188).

3.  In the November 5, 2015 Loss Report, Harrison described the accident as follows:

Loss Description   V1 EXITED ON 12TH ST AND MOORE, 2 CARS IN FRONT OF V1, 1 VEHICLE MADE A LEFT INTO A NEIGHTBORHOOD, THE CAR BEHIND THE OTHER LOCKED BRAKES AND V1 HIT V2

*See* (**Ex. 10**, HARRISON-01188). (In this scenario, Harrison is V1 and Mason is V2.)

4.  On November 10, 2015, State Farm received a copy of the Official Oklahoma Traffic Collision Report. *See* (**Ex. 11**, HARRISON-03892 - HARRISON-03896).

5.  On November 11, 2015, Harrison offered the following version to State Farm:

> "She indicated another veh [sic] ahead of V2 slammed on their brakes causing V2 to stop suddenly and V1 r/e [sic] them."

*See* (**Ex. 12**, HARRISON-00144). (Harrison is V1; Mason is V2. Harrison now indicates the car ahead of Mason slammed on their brakes causing Mason to stop suddenly.)

6.  On November 12, 2015, based on the information obtained to date (including information from the accident report, the photos of Harrison's vehicle and Harrison's statements about the loss), State Farm determined Harrison was following too closely and caused the accident. *See* (**Ex. 12**, HARRISON-00142).

7.  On February 26, 2016, Harrison offered the following to State Farm:

> FINAL: V1 EXITED ON 12TH ST AND MOORE, 2 CARS IN FRONT OF V1, 1 VEHICLE MADE A LEFT INTO A NEIGHBORHOOD, THE CAR BEHIND THE OTHER LOCKED BRAKES AND V1 r/e V2

*See (***Ex. 12**, HARRISON-00122). (In this scenario Harrison is V1 and Mason is V2.)

8.   On December 29, 2016, based on the information obtained to date (including information on the accident report, photos and Harrison's versions of the accident), State Farm documented liability on Harrison in the UM/UIM file. *See* **Ex. 13**, SF-00049.

9.   On January 3, 2017, Gass asked State Farm to make substitute payment of Plaintiff's *underinsured motorist* benefits of $25,000. *See* **Ex. 14**, SF-00237.[8]

10.   On January 11, 2017, after considering Plaintiff's medical information, State Farm wrote to Gass and explained the value of Plaintiff's claim was determined to be within the available liability limits of Harrison. *See* **Ex. 15**, SF-00201.

11.   On August 28, 2017, Harrison offered another and different scenario to State Farm:

> Rec'd voicemail from Lyndee, returned her call.  Explained to her why she received the letter.  She believes this is all planned because V2D slammed on her brakes for no reason.  Explained if she receives a suit to notify us ASAP.  She understood.

*See* (**Ex. 12**, HARRISON-00116). (***Harrison now claimed that Mason (V2) slammed on her brakes for no reason***.)

12.   On September 25, 2017, Plaintiff filed suit against Harrison, alleging negligence and negligence *per se* for violation of state and municipal laws relating to driving a motor vehicle. *See* **Ex. 16**, Petition filed in *Mason I*, and **Ex. 17**, Plaintiff's Response to State Farm's Requests for Admission Nos. 1 and 3 [hereinafter "RFA"].

13.   On June 3, 2018, **Harrison admitted that she was the sole cause of the accident**.

---

[8] *See* **Ex. 9**, pgs. 37:25-38:10, in which Mr. Pignato confirms Gass was presenting an *underinsured motorist* claim to State Farm on behalf of Plaintiff.

<u>**RESPONSE TO REQUESTS FOR ADMISSIONS**</u>

**REQUEST FOR ADMISSION NO. 1**:     Admit Defendant's negligence is the cause of the 11/4/15 collision.

**RESPONSE**: Admitted to the extent that Defendant is admitting that she caused the accident.

**REQUEST FOR ADMISSION NO. 2**:     Admit Defendant's negligence is the sole cause of the 11/4/15 collision.

**RESPONSE**:   Admitted to the extent that Defendant is admitting that she caused the accident.

*See* **Ex. 5**, Harrison's Responses to Masons Requests for Admissions, HARRISON-01790.

14.  On September 10, 2018, **Harrison recanted her Admissions** testifying that a car traveling in the right lane cut in front of Mason causing Mason to stop suddenly. Specifically, she testified:

> A:  I just remember the vehicle in front of me, a vehicle in front of them cut over to make a left-handed turn on a side street. I am assuming that's the side street. I don't know what the name of it was, but they were trying to, and the oncoming traffic was coming so fast, the person in front of me tried to lock up.
>
> …

*See* **Ex. 6**, September 10, 2018 Deposition of Lyndee Harrison, pg. 13:1-7.

15.  Between the date of loss and the *Mason I* trial, Harrison gave **_eight_** versions of the accident. Three versions were given before State Farm made its liability determination. *See* UMFs 2, 4, 5 and 6, *supra*. *See also* **Ex. 12**, HARRISON-00142.

16.  On June 18, 2020, nearly a year after the defense verdict in *Mason I*, Gass wrote to State Farm seeking payment of Plaintiff's *underinsured motorist* benefits. Gass claimed "the explanation for the defense verdict is 'the driver of the third vehicle' referred to by Lyndee Harrison." Gass presented no evidence to support his "explanation". *See* **Ex. 7**, SF-00641.

17. Gass' June 18, 2020 letter was the first time Plaintiff presented a claim under the _uninsured motorist_ coverage (against the phantom driver). _See_ **Ex. 9**, pg. 80:3-13.

18. State Farm responded by letter on July 27, 2020, stating:

    1. "I do not find anything in the jury's verdict to suggest that there was a phantom driver/vehicle that caused or contributed to the happening of this accident as you have suggested.

    2. It is my understanding that Ms. Mason did not file an appeal and has accepted the Jury's verdict.

    3. Your conclusion that "the explanation for the defense verdict is 'the driver of the third vehicle' referred to by Lyndee Harrison" does not seem to be an option presented to the jury. Therefore, I am uncertain how you reach your conclusion.

    4. I do not believe the jury's verdict support's [sic] your conclusion or Ms. Mason's claim for payment under the Uninsured Motorist Coverage."

    5. I welcome any additional information you may wish to present.

_See_ **Ex. 8**.

19. Gass did not present any additional information to State Farm in response to the July 27, 2020 letter. _See_ **Ex. 3**, pgs. 72:22-73:4.

20. Gass admitted there was no additional information he wanted State Farm to consider in responding to his June 18, 2020 letter.  _See_ **Ex. 3**, pg. 72:17-21.

    **Plaintiff's _Consistent_ Contentions Regarding the Accident and Injuries/Damages**

21. Plaintiff advised Sergeant Troxel at the scene of the accident that "she came to a complete stop, due to a vehicle stopping in front of her vehicle and was struck from behind by [Harrison]". _See_ **Ex. 11**, Official Oklahoma Traffic Collision Report.

22. In January 2018, Plaintiff described the accident in her Answers to Interrogatories in _Mason I_ as follows:

     i.  The Nissan Maxima I was driving was struck from behind when I came to a stop, due to traffic. The car in front of mine was stopped waiting for oncoming traffic. I was at a complete stop for a few seconds.

*See* **Ex. 18**, Plaintiff's Answers to Defendant's First Interrogatories and Requests for

Production in *Mason I*, Answer to Interrogatory No. 2; and **Ex. 17**, Response to RFA No. 9.

     ii.  The Nissan Maxima [Mason] was driving was struck from behind when [Mason] came to a stop, due to traffic

*See* **Ex. 18**, Answer to Interrogatory No. 4; and **Ex. 17**, Response to RFA No. 10.

     iii.  The Nissan Maxima I was driving was struck from behind when I came to a stop, due to traffic. The car in front of mine was stopped waiting for oncoming traffic before turning."

*See* **Ex. 18**, Answer to Interrogatory No. 20; and **Ex. 17**, Response to RFA No. 11.

     iv.  The car in front of me stopped for oncoming traffic. I was stopped waiting for the car in front of me to turn. The car in front of me turned and my foot was still on the brake when my car was struck. My foot stayed on the brake after my car was struck. I was stopped. My foot was on the brake.

*See* **Ex. 18**, Answer to Interrogatory No. 21; and **Ex. 17**, Response to RFA No. 12.

23. On May 1, 2018, Plaintiff testified at her deposition in *Mason I*, as follows:

Q:  About what time did the accident happen?
A:  Okay. I was at – I was at a standstill behind another vehicle on the inside lane on 12th Street. The car in front of me was waiting on traffic in the opposite direction to clear before they were able to turn, . . . As soon as the car in front of me turned . . . I was immediately hit from the back.

*See* **Ex. 19**, Deposition of Plaintiff (5/1/2018), pgs. 16:24 - 17:8.

Q:  Okay. And there's a car directly in front of you?
A:  Yes.
Q:  You were at a complete stop?
A:  Yes.
Q:  Car in front of you was at a complete stop?
A:  Yes.

Q:  The car in front of you was waiting on traffic to clear, which was coming
    in the opposite direction?
A:  Yes.

*See* **Ex. 19**, pg. 18:3-12; and **Ex. 17**, Response to RFA No. 13.

24.  On September 27, 2018, ten (10) days after Harrison's September 10, 2018 deposition, Plaintiff proposed a stipulation stating "[Harrison's] negligence is the sole cause of the 11/4/15 wreck." *See* **Ex. 20**, Proposed Stipulations.

25.  On April 17, 2019, in the Pretrial Conference Order, Plaintiff proposed a stipulation stating "[Harrison's] negligence is the sole cause of the 11/4/15 wreck." *See* **Ex. 21**, Pretrial Conference Order filed in *Mason I. See also* **Ex. 17**, Response to RFA No. 14.

26.  On September 23, 2019, Plaintiff testified as follows at the *Mason I* jury trial:

Q:  As you came up to Norman Avenue, what happened?
A:  I came to a normal stop behind a car that was in front of me who was
    sitting waiting on oncoming traffic to clear so that they could turn.  So ***I
    was sitting behind that care for at least six seconds***. As soon as the car
    was able to turn when traffic cleared is when I was hit - - was struck from
    behind. (bold and italics added)
Q:  Did the car in front of you make a sudden stop?
A:  No, sir.
Q:  Did you make a sudden stop?
A:  No, sir.

*See* **Ex. 22**, Trial Transcript, September 23, 2019, pgs. 62:25-63:10; and **Ex. 17**, Response to RFA No. 18 [sic].

27.  On May 6, 2022, Plaintiff testified at her deposition in this case as follows:

Q:  [As] I understand it, you were stopped while heading westbound on
    Northwest 12th Street when you were rear-ended.
A:  Correct.
                                    …
Q:  You did not stop so fast and so suddenly, did you?
A:  No, sir.

Q:  You did not lock you brakes up, did you?
A: No, sir.
Q: In fact, you were stopped for as many as five or six seconds, weren't you?
A:  Correct.

*See* **Ex. 4**, pgs. 11:6-10, 49:3-11. *See also* pgs. 39:6-8, 41:7-17, 58:15-19 and 80:20-81:9.

Q:  You said, no, there wasn't a phantom vehicle, didn't you?
A:  Correct.
Q:  You said there was no phantom vehicle involved because that's truthful?
A:  Correct.

*See* **Ex. 4**, pg. 75:18-23.

Q:  Do you believe Ms. Harrison's story about the phantom vehicle?
A:  No, I do not.

*See* **Ex. 4**, pg. 139:1-3.[9, 10]

Q:  [After] you learned that Ms. Harrison created the third car, the phantom vehicle, you could have said, I think she's right, there was a third vehicle. You didn't do that, because it wasn't true?
A:  Correct.

*See* **Ex. 4**, pg. 157:7-12.

Q:  Your testimony about how this accident occurred has remained constant over time, hasn't it?
A:  Yes.

*See* **Ex. 4**, pg. 45:11-14.

### Harrison's *Inconsistent* Versions of the Accident

28. Harrison's inconsistent statements are detailed in UMF Nos. 2, 3, 5, 6, 7, 11, 13 and 14, *supra*.

---

[9] Footnote 4 details examples of Gass' deposition testimony.

[10] *See also* **Ex. 9**, pgs. 67:17-68:3, in which Pignato testified there is no physical evidence or other witness statement (aside from Harrison's inconsistent statements) supporting the claim that a phantom driver caused or contributed to the accident.

## Sergeant Trevor Troxell's Testimony Regarding His Investigation of the Accident

29. On September 23, 2019, Sergeant Trevor Troxell testified regarding his investigation of the November 4, 2015 accident:

> Q: Help us to understand – first of all, what did Ms. Mason, Vehicle No. 1, what did she say happened?
> A:  She pretty much said – I made contract with her. She said she was traveling westbound in the inside lane, came to a complete stop due to traffic in front of her vehicle, and was struck from behind by Unit 2.
> Q: What did Unit 2 say happened, the lady, Ms. Harrison?
> A:  She stated she was traveling behind Unit 1 and attempted to stop and struck Unit 1 on the rear bumper with her front bumper.

*See* **Ex. 23**, pg. 53:12-22.

> Q:  Did you hear anything like a statement that a vehicle, a third vehicle, came out of somewhere and cut in front of anybody and caused this wreck?
> A: No, not that I recall from reviewing my accident report, it's not on there.

*See* **Ex. 23**, pg. 54:15-20.

### *Mason I* - Trial, Jury Instructions and Verdict

30. In *Mason I*, Plaintiff was represented by experienced lawyers, Rex Travis, Greg Milstead and Andrew Gass. *See* **Ex. 17**, Response to RFA No. 5.[11]

31. At the close of evidence in *Mason I*, the Court instructed the jury. The instructions included the following:

> Plaintiff, Lynette Mason, claims that she sustained injuries which were directly caused by the negligence of Defendant, Lyndee Harrison in colliding with the rear of Plaintiff's vehicle.

> Defendant Lyndee Harrison denies liability for causing the accident, and denies the causation, nature and extent of Plaintiff's claimed injuries.

---

[11] *See also* **Ex. 9**, pg. 31:4-12, in which Mr. Pignato describes Mr. Travis as a "legend" and "a walking hornbook on UM law."

*See* **Ex. 24**, Jury Instruction No. 4. The Court included instructions on Negligence, Negligence *Per Se* and Direct Cause. *See* **Ex. 24**, Jury Instructions Nos. 6, 12 and 17. The jury was given a Blue Verdict Form (for Plaintiff Mason) and a Pink Verdict Form (for Defendant Harrison). *See* **Ex. 24**, Jury Instruction Nos. 19 and 20.

32. Plaintiff admits she did not submit a proposed jury instruction or ask the Court to submit an instruction requesting the jury determine whether the accident was caused by the negligence of an uninsured third party (phantom driver). *See* **Ex. 17**, Response to RFA Nos. 25 [sic] and 26 [sic].

33. Plaintiff did not object to the jury instructions by dictating into the record in open court, after the reading of the instructions. *See* **Ex. 25**, Trial Transcript, September 23, 2019, pgs. 57:12 - 58:8.

34. The jury returned the Pink Verdict Form, finding in favor of Defendant Harrison. If you find the occurrence with which this lawsuit is concerned was directly caused by the contributory negligence of Lynnette Mason, and not by the negligence on the party of Lyndee Harrison, or, if you find that Lynnette Mason has failed to prove Lyndee Harrison was negligent, then you shall use the Pink Verdict Form and find in favor of Lyndee Harrison.

35. On October 3, 2019, a Journal Entry of Judgment was filed in *Mason I*. *See* **Ex. 1**, Journal Entry of Judgment filed in *Mason I*.

### STANDARD FOR GRANTING SUMMARY JUDGMENT

Summary judgment is proper under Rule 56 of the Federal Rules of Civil Procedure, when the record before the court shows there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). *See also Manders v. State of Okla. ex rel. Dept. of Mental Health*, 875 F.2d 263, 264 (10th Cir. 1989); *Committee for First Amendment v. Campbell*, 962 F.2d 1517, 1521 (10th Cir. 1992). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "In essence . . . the inquiry . . . is . . . whether the evidence presents a sufficient disagreement to require a submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-252; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

The moving party bears the initial burden of demonstrating through pleadings, depositions, affidavits, admissions and answers to interrogatories, if any, that there is no genuine issue of material fact. *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022 (10th Cir. 1992), *cert. denied*, 506 U.S. 1013 (1992). If the moving party meets this burden, the burden shifts to the non-moving party to demonstrate the existence of a material fact which would justify a trial. *See, e.g.*, *Committee for First Amendments v. Campbell*, 962 F.2d 1517, 1521 (10th Cir. 1992); *Applied Genetics Intern., Inc. v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

The United States Supreme Court has stated that summary judgment cannot be defeated by drawing attenuated inferences or casting "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Instead, the plaintiff must demonstrate "concrete particulars" showing that a trial is necessary. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (citations omitted).

<u>ARGUMENT AND AUTHORITIES</u>

**A.   PLAINTIFF CANNOT ESTABLISH THE REQUIRED ELEMENTS FOR PAYMENT UNDER EITHER THE UNINSURED OR UNDERINSURED MOTORIST COVERAGE.**

Under Oklahoma law, the burden of establishing a UIM claim is on the insured. The insured must "prove the existence of two simultaneous conditions precedent: 1) that he has a legal right to recover against the tortfeasor, and 2) that his claim exceeds the available liability coverage of the tort-feasor." *Porter v. State Farm Mut. Auto. Ins. Co.*, 231 P.3d 691, 693 (Okla. Civ. App. 2010); *see also Gates v. Eller*, 2001 OK 38,¶12,  22 P.3d 1215, 1219 (Okla. 2001). ("Our uninsured motorist statute imposes upon an injured insured seeking to recover uninsured motorist insurance benefits the burden of proving the uninsured status of the tortfeasor's motor vehicle. Our holding in *Burch* did not diminish this burden in any respect. To the contrary, *Burch* observed that an injured insured must demonstrate that the **preconditions for loss under the uninsured motorist coverage exist** before he or she can recover under the primary uninsured motorist coverage"). (Bold in original.)

Uninsured/underinsured ("UM/UIM) motorist coverage protects insureds "who are ***legally entitled to recover*** damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease." 36 O.S. § 3636(B). (Emphasis added.) In order to establish a valid claim under the UM coverage,

such that non-payment of UM/UIM coverage would constitute a breach of contract, ***an insured must demonstrate that the preconditions of loss under the policy's UM coverage exist*** (emphasis added). *Vickers v. Progressive Northern Ins. Co.*, 353 F.Supp.3d 1153, 1166, citing *Gates v. Eller*, 2001 OK 38, 22 P.3d 1215. "These preconditions include at least (1) that the tortfeasor is uninsured or underinsured, and (2) that the ***tortfeasor is at fault***, which gives rise to damages." *Id*. (emphasis added), *see also Boyer v. Oklahoma Farm Bureau Mut. Ins. Co.*, 1995 OK CIV APP 102, 902 P.2d 83, 86 ("before an insured can proceed in an action to recover UM/UIM benefits under the contract, he must prove the existence of two simultaneous conditions precedent: 1) that he has a legal right to recover against the tort-feasor, and 2) that his claim exceeds the available liability coverage of the tort-feasor").

Plaintiff cannot meet her burden for two reasons:

1)  the jury verdict for Harrison in *Mason I* is conclusive evidence that Plaintiff is not legally entitled to recover damages from Harrison (***no valid underinsured motorist claim***) and

2)  Plaintiff has continually and consistently stated/testified there was no phantom vehicle involved in this accident. (***Plaintiff's testimony defeats her uninsured motorist claim.***)

### 1.  Because Plaintiff is Not Legally Entitled to Recover Against Harrison, Plaintiff Does Not Have a Valid *Underinsured* Motorist Claim.

At all times since the accident and as recently as her May 6, 2022 deposition, Plaintiff maintains the accident and her injuries/damages were caused solely by Harrison. Plaintiff's testimony is that she was at a stop for traffic for at least six seconds when

Harrison struck her from behind. Plaintiff denied making a sudden stop. *See* **Ex. 22**, Trial

Transcript for September 23, 2019, pgs. 62:25 - 63:10.

The *Mason I* jury returned a verdict in favor of Harrison, finding either that the

accident was directly caused by the contributory negligence of Plaintiff (and not the

negligence on the part of Harrison) or that Plaintiff failed to prove Harrison was negligent.

Plaintiff concedes in the Joint Status Report [Doc. No. 15]:

> From the beginning, Plaintiff claimed the wreck and her resulting injuries
> were caused by Harrison. During its handling of Plaintiff's UM claim, *State
> Farm never disputed or questioned that Harrison was liable for the wreck
> with Plaintiff, but ultimately denied her UM claim asserting that the value of
> her claim was within Harrison's liability limits of $250,000* (italics added).[12]

*See* Doc. No. 15, at pg. 2.

The *Mason I* jury verdict is conclusive evidence that Plaintiff is not legally entitled

to recover damages from Harrison. Therefore, as a matter of law, Plaintiff does not have

an underinsured motorist claim with regard to Harrison.[13]

### 2. Plaintiff is Not Legally Entitled to Recover Against a Phantom Driver; Therefore, Plaintiff Does Not Have a Valid *Uninsured* Motorist Claim.

Plaintiff's testimony defeats the claim her lawyers are making against an alleged

phantom driver. At all times since the November 14, 2015 accident, Plaintiff has

maintained she was stopped when she was rear ended by Harrison. In her May 6, 2022

---

[12] Plaintiff now claims State Farm breached its contract and committed bad faith by assigning 100% negligence to Harrison. *Had State Farm assigned negligence to the phantom driver, Plaintiff would have likely alleged State Farm breached its contract and committed bad faith by looking for a way to minimize her recovery.*

[13] *See* **Ex. 9**, pg. 88:9-24.

deposition Plaintiff again denied that a phantom vehicle caused or contributed to this accident. Specifically, Mason testified:

```
 6      Q    (By Mr. Acquaviva)      Are you aware
 7  of any facts that would support Ms. Harrison's
 8  claim of another vehicle, a phantom vehicle
 9  being involved.
10          MS. RUST:  Object to the form.
11          THE WITNESS:  No.
```

*See* **Ex. 4**, pg. 85:6-11.

Mason disbelieves Harrison's story about a phantom vehicle:

```
 1      Q    (By Mr. Acquaviva)   Do you believe
 2  Ms. Harrison's story about the phantom vehicle?
 3      A    No, I do not.
```

*See* **Ex. 4**, pg. 139:1-3.

The State Farm policy provides for UM/UIM coverage as follows:

> **We** will pay compensatory damages for ***bodily injury*** an ***insured*** is legally entitled to recover from the owner or driver of an ***uninsured motor vehicle***. …

*See* **Ex. 26,** Insurance Policy, SF-00803 - SF-00845, at SF-00830.

This provision has been interpreted by the Oklahoma Supreme Court to mean that the policy includes coverage "for accidental injury caused by uninsured motorists." *Mayer v. State Farm Mut. Auto. Ins. Co.*, 1997 OK 67, 944 P.2d 288, 289. Oklahoma courts have also determined that the contractual and statutory phrase "legally entitled to recover" means "that ***the insured must be able to establish fault on the part of the uninsured motorist*** which gives rise to damages and prove the extent of those damages." *See Rose v. State Farm Mut. Auto. Ins. Co.*, 1991 OK CIV APP 124, 821 P.2d 1077, 1078 (citing

*Uptegraft v. Home Ins. Co.*, 1983 OK 41, 662 P.2d 681) (emphasis added); *Barfield v. Barfield,* 1987 OK 72, 742 P.2d 1107.

The conditions for recovery under a UM/UIM policy can be satisfied even if the insured cannot prove all the elements of the tort against the uninsured. *Barfield*, 742 P.2d at 1112. However, the one consistent that must be established is ***fault on the part of the uninsured motorist***. *Id*.

Despite Plaintiff's attorney's speculation (*see* Gass letter [Doc 17-14], the *Mason I* jury made no determination regarding the involvement of a phantom driver. Despite knowledge of Harrison's phantom vehicle claim, Plaintiff never amended her claims in *Mason I* to include a cause of action against a phantom driver, and the jury was not asked to make any finding with regard to a phantom driver.

Plaintiff testified/stated on numerous occasions that there was no phantom vehicle involved in this accident. (*See* UMFs 22-29). In order to prevail on her claim for breach of contract, Plaintiff would be asking the jury to disbelieve her version of the events. Plaintiff's testimony defeats her breach of contract claim.

Because Plaintiff cannot establish that she is legally entitled to recover from a phantom driver, her breach of contract claim fails as a matter of law.

**B.   AS A MATTER OF LAW, STATE FARM DID NOT BREACH ITS DUTY OF GOOD FAITH AND FAIR DEALING WITH PLAINTIFF.**

**1.  Plaintiff Cannot Establish the "Essential Elements" of a Bad Faith Claim.**

In *Badillo v. Mid Century Ins. Co.*, 2005 OK 48, 121 P.3d 1080, 1093, the Court set forth the "essential elements" of a bad faith claim a plaintiff must establish to make out a

prima facie case, a case sufficient to warrant submission of the issue to the jury.  In *Ball v. Wilshire Ins. Co.*, 2009 OK 38, 221 P.3d 717, a case in which the plaintiff alleged bad faith delay in payment of her UM claim, the Court stated:

> The elements of a bad faith claim against an insurer for delay in payment of first-party coverage are: (1) *claimant was entitled to coverage under the insurance policy at issue*; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury. The ***absence of any one of these elements defeats a bad faith claim***.

*Id.* at 724 (footnotes omitted) (emphasis added).

Oklahoma courts have also noted that "[I]nsurers are free to make legitimate business decisions (and mistakes) regarding payment, as long as they act reasonably and deal fairly and in good faith with their insureds." *See Bailey v. Farmers Ins. Co., Inc.*, 2006 OK CIV APP 85, 137 P.3d 1260, 1264.

It is Plaintiff's burden to establish that she properly presented a valid UM/UIM claim. The undisputed facts establish that Plaintiff cannot sustain her burden of proof. Plaintiff is not legally entitled to recover against Harrison, as per the *Mason I* jury verdict, and Plaintiff is not legally entitled to recover against a phantom driver, as per Plaintiff's own testimony. (*See* UMFs 22-29.)

The reasonableness of an insurance company's decision not to pay an insured's claim may be determined as a matter of law. *Oulds v. Principal Mut. Life. Ins. Co.*, 6 F.3d 1431, 1437 (10th Cir. 1993). Oklahoma courts have not hesitated to find, <u>as a matter of law</u>, that the insurer did not act in bad faith where there was a reasonable basis for its actions. *See Hays v. Jackson Nat'l Life Ins. Co.,* 105 F.3d 583, 586 (10th Cir. 1997); *Claborn v.*

*Washington National Ins. Co.*, 1996 OK 8, 910 P.2d 1046, 1051 (trial court erred as a matter of law in submitting bad faith claim to jury where insurer's denial of claim based on a legitimate dispute); *Ballinger v. Security Conn. Life. Ins. Co.*, 1993 OK 69, 862 P.2d 68, 70 (summary judgment in favor of insurer on bad faith claim properly granted where plaintiff's allegations "boil[ed] down to the fact that Defendant defended the lawsuit when plaintiff had believed they would not do so."); *Goodwin v. Old Republic Ins. Co.*, 1992 OK 34, 828 P.2d 431, 436 (affirming summary judgment in favor of insurer on bad faith claim where insurer had reasonable grounds for denying workers compensation claim); *Whitmire v. Mid-Continent Cas. Co.*, 1996 OK CIV APP 59, 877 P.2d 620, 622; *Conti v. Republic Underwriters Ins. Co.*, 1989 OK 128, 782 P.2d 1357, 1360 (trial court erred in submitting bad faith and punitive damages issues to jury where there was a bonafide dispute as to who was responsible for arson which destroyed the insured's home).

Oklahoma Uniform Jury Instruction-3d No. 22.2 provides, in pertinent part:

[Plaintiff] claims that [the Insurer] violated its duty of good faith and fair dealing by unreasonably, and in bad faith, refusing to pay [Plaintiff] the proper amount for **a valid** claim under the insurance policy. (Emphasis added)

In order to avoid summary judgment, Plaintiff must prove that State Farm "violated its duty of good faith by unreasonably, and in bad faith, refusing to pay the proper amount for **a valid** claim under the insurance policy." *See* OUJI-3d No. 22.2. In other words, Plaintiff must prove she was denied a benefit to which she was entitled. *McCorkle v. Great Atlantic Ins. Co.,* 1981 OK 128, 637 P.2d at 587. Plaintiff cannot meet her burden.

**2. As a Matter of Law, Plaintiff Cannot Prevail on Her Bad Faith Claim Because She Failed to Establish a Breach of the Underlying Contract.**

"[A] determination of liability under the contract is a prerequisite to a recovery for bad faith breach of an insurance contract." *Davis v. GHS Health Maintenance Org., Inc.*, 2001 OK 3, 22 P.3d 1204, 1210.

The case of *Curtis v. Progressive Northern Ins. Co.*, 2022 WL 109003 (W.D. Okla. January 11, 2022),[14] is instructive. In *Curtis*, the plaintiff alleged breach of contract and bad faith against Progressive for failure to pay more than the actual case value plaintiff's collision claim. This Court determined that Progressive was entitled to judgment as a matter of law on the breach of contract claim. The Court then turned to plaintiff's bad faith claim and found "**a party must establish breach of the insurance contract in order to maintain a related bad faith claim**." *Id*. at *6. (Emphasis added.) Plaintiff sought to avoid the Court's conclusion by citing the case of *Vining v. Enterprise Financial Group*, 148 F.3d 1206 (10th.Cir. 1998), in which the Tenth Circuit noted no Oklahoma court had held an insured must prevail on a separate underlying breach of contract claim in order to maintain a successful bad faith claim. This Court noted that cases after *Vining* established that a plaintiff must establish breach of the underlying contract in order to maintain a bad faith claim, "since a determination of liability under the contract is a prerequisite to a recovery for a bad faith breach of an insurance contract." *Curtis*, 2022 WL 109003, *6, citing *Davis v. GHS Health Maint. Org., Inc.*, *supra*; *Davis v. Fed. Ins. Co.*, 382 F.Supp.3d 1189 (W.D. Okla. 2019) ("As Plaintiffs cannot establish breach of the insurance contract, Defendant is also entitled to summary judgment on Plaintiffs' bad faith tort claim."); and

---

[14] Attached hereto as **Ex. 27**.

*Edens v. The Netherlands Ins. Co.*, 834 F.3d 1116 (10th Cir. 2016). The *Curtis* Court held that since plaintiff had failed to establish that Progressive breached the insurance contract, Progressive was entitled to summary judgment on the bad faith claim.

The case of *Morrison v. Stonebridge Life Ins. Co.*, 2015 WL 137261 (W.D. Okla. January 9, 2015),[15] is similarly instructive. In *Morrison*, plaintiff and her husband had purchased accident insurance, which promised to pay a benefit for loss of life if the insured was injured in an accident not otherwise excluded by the policy. Plaintiff's husband sustained a fall while exiting the shower, which lead to hospitalization. Four days later, he was removed from life support measures. The cause of death was listed as acute coronary syndrome caused by coronary artery disease. Plaintiff submitted an insurance claim, which was denied as there was no evidence the death resulted from an accidental bodily injury independent of all other causes. Plaintiff sought to recover for breach of contract and bad faith, among other causes of action. Progressive sought summary judgment on plaintiff's claims. This Court held that plaintiff failed to demonstrate a genuine dispute of material fact related to the issue of whether Mr. Morrison's death was covered by the accident death policy and granted Progressive judgment on the breach of contract claim.

This Court then noted, "[b]ecause Plaintiff has failed to establish a breach of contract, she also cannot prevail on her bad faith claim as a matter of law." *Id*. at *7, citing *Davis v. GHS Health Maint. Org., Inc.*, *supra,* and *Ball v. Wilshire Ins. Co.*, 2009 OK 38, 221 P.3d 717, 724 (essential element of a bad faith claim is that claimant was entitled to

---

[15] Attached hereto as **Ex. 28**.

coverage under the insurance policy). Summary judgment was granted on the bad faith claim.

> When the Oklahoma Supreme Court held that claimants must make a "clear showing that the insurer unreasonably, and in bad faith, withholds payment" . . . it was simply emphasizing the obvious: if the insured were not entitled to payment, a cause of action for wrongful denial of the claim could not arise.

*McCarty v. First of Georgia Ins. Co.*, 713 F.2d 609, 612 (10th.Cir. 1983), citing *Christian v. American Home Assurance Co.*, 1977 OK 141, 577 P.2d 899, 905.

As explained in Section A above, Plaintiff has failed to establish a breach of contract in this case. Because the *Mason I* jury verdict is conclusive evidence that Plaintiff is not legally entitled to recover damages from Harrison and because Plaintiff has failed to establish that she is legally entitled to recover from a phantom driver (based on her own testimony), Plaintiff's claim for breach of contract fails. Plaintiff has failed to establish a breach of contract and, as a result, her bad faith claim fails as a matter of law.

### 3. At the Time(s) Performance Was Requested by Plaintiff, There Was a Legitimate Dispute as to Whether Plaintiff's Claim Was Covered by the Policy.

"An insurer clearly has the right to resist payment and litigate any claim to which the insurer has a reasonable defense." *Buzzard v. Farmers Ins. Co., Inc.*, 1991 OK 127, 824 P.2d 1105, 1109. "However, a claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient. The decisive question is whether the insurer had a 'good faith belief, *at the time its performance was requested*, that it had justifiable reason for withholding payment under the policy.'" *Id.*, citing *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993) (emphasis original).

"Numerous Oklahoma cases have ruled as a matter of law that no reasonable inference of bad faith arises when an insurer denies a claim solely because of the existence of a legitimate dispute." *Oulds,* 6 F.3d at 1442.

"[I]n order to establish [a cause of action for bad faith], the insured must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith for withholding payment of the insured's claim." *Id.* at 1436. Mere allegations that State Farm breached its duty of good faith and fair dealing does not automatically entitle Plaintiff to present her case to a jury. *Id.*

In the case of *Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, 1128 (10th Cir. 2012), the Tenth Circuit determined that a reasonable jury could not find that State Farm did not rely on a legitimate reason in disputing Bannister's claim. The facts of the accident in *Bannister* are incredibly similar to those in this case. Bannister was involved in an accident when he was unable to safely stop his motorcycle when the car in front of him braked suddenly because it was allegedly cut off by another vehicle. **The Court found that State Farm's reliance on the fact that Bannister did not keep sufficient space between him and the vehicle in front of him to brake and avoid the accident** (47 O.S. § 11-310(a) – driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent) **was in and of itself sufficient to give rise to a reasonable dispute about fault**. The Court also noted there were no identified witnesses who might have contradicted the facts.

At the time performance was requested by Bannister, **State Farm's reliance on the crash scenario was "sufficient to create a legitimate dispute as to whether Bannister**

**was at least majority at fault.**" Additionally, Bannister provided no evidence that State Farm arbitrarily prejudged the claim or was otherwise engaged in systematic bad-faith denial of claims. *Id*. at 1131. The Court held Bannister failed to produce evidence that State Farm did not actually dispute his claim in good faith, as was necessary to submit the bad faith theory to the jury and affirmed the lower court's JMOL. *Id*.

In the present case, each time performance was requested, State Farm had a reasonable, good faith belief for withholding payment. *See* UMFs 2-12, 12, 22-29 and 31. *Plaintiff is still currently requesting performance under the contract*, based on her breach of contract claim. The information known to State Farm currently encompasses ALL the information learned before *Mason I*, during *Mason I*, and during this litigation (including the inconsistencies of Harrison's versions of the events, the consistencies of Plaintiff's version, discovery responses, depositions, trial testimony, etc.).

Since November 4, 2015, Harrison is the only individual who has advised of the involvement of a phantom vehicle, and she was wildly inconsistent in that allegation (*see* UMFs 2-6,8, 12, 14 and 15). No other witness has advised of the involvement of a phantom vehicle[16] and at no point has any additional evidence been produced to even suggest a phantom vehicle was involved in this accident.

Each time performance was requested by Plaintiff on the contract, there was a legitimate dispute as to whether Plaintiff's claim was covered under the contract and State

---

[16] *See* **Ex. 9**, pg. 44:12-19, in which Pignato agrees he is not aware of any witnesses to the accident.

Farm relied on that legitimate dispute when it withheld payment. State Farm is entitled to summary judgment on Plaintiff's bad faith claim.

> **4. State Farm's Investigation was Reasonable and Adequate. Plaintiff has Failed to Show Material Facts Were Overlooked or a More Thorough Investigation Would Have Produced Relevant Evidence to Delegitimize State Farm's Liability Decision.**

When a bad faith claim is premised on insufficient investigation, the plaintiff must show that the insurer failed to take some reasonable step in the investigation and the failure resulted in the insurer not having relevant information supporting the claim. *Timberlake Const. Co. v. U.S.F. & G.*, 71 F.3d 335 (10th Cir. 1995). "A failure to investigate theory must be based on more than hypothetical loose ends." *Sims v. Great American Life Ins. Co.*, 469 F.3d 870, 893 n.18 (10th Cir. 2006).

"[W]hen a bad faith claim is premised on inadequate investigation, the [claimant] must make a showing that material facts were overlooked or that a more thorough investigation would have produced relevant information" that would have delegitimized the insurer's dispute of the claim. *Timberlake,* 71 F.3d at 345. That is, evidence of inadequate investigation must "suggest a sham defense or an intentional disregard of uncontrovertible facts" in order to be put to a jury. *Id.* To illustrate, where an insurer had interviewed a claimant, but had failed to question key individuals and therefore "had not completed an investigation [but rather] had only gotten one side of the story," JMOL was warranted when such questioning "would not have changed the underlying *facts* already known to [the insurer], facts from which [the insurer] was entitled to form a reasonable belief" regarding its justification for denying the claim. *Id.*

In *Bannister*, *supra*, the Tenth Circuit rejected plaintiff's inadequate investigation theory, noting that even assuming State Farm's investigation was inadequate, the theory failed because further investigation would not have changed or contradicted the underlying facts already known to State Farm and from which State Farm was entitled to form a reasonable belief. *Id*. at 1131. Following *Bannister*, the Tenth Circuit in *Harris v. Progressive Direct insurance Company*, 740 Fed.Appx. 900, 917 (10th Cir. 2018), held:

> The record before the *Bannister* panel revealed that State Farm took statements from Mr. Bannister and his wife, obtained a police report, and internally discussed Mr. Bannister's claim. However, State Farm did not investigate whether Mr. Bannister was drunk at the time of the accident, or whether he was following the vehicles in front of him too closely. Significantly, we noted that, if State Farm had investigated further and **"obtained Bannister's hospital record from the aftermath of the accident ... State Farm would have discovered ... that Bannister's blood-alcohol level was 0.09"** (that is, above the legal alcohol limit). Despite State Farm's investigative oversight, we held that the **"<u>facts of the crash scenario alone</u>—a single vehicle accident where the car in front of the claimant braked suddenly, and the claimant had insufficient space timely to stop"** <u>were sufficient to defeat the insured's bad faith claim</u>. (Internal citations omitted.)

*Harris,* 740 Fed. Appx. at 917.

In this case, State Farm spoke with Harrison on several occasions. Harrison gave inconsistent versions of the facts. State Farm had a copy of the accident report, was aware of the officer's investigation and that Harrison received a citation for following too closely. State Farm determined Harrison, not a phantom driver was at fault and the value of Mason's claim was within Harrison's $250,000 liability limits.

Plaintiff claims State Farm's investigation was inadequate but has failed to explain how further investigation would support that a phantom driver caused or contributed to the

accident. Plaintiff may claim State Farm should have taken a recorded statement of Plaintiff. A recorded statement from Plaintiff would only have served to support State Farm's liability determination. Plaintiff may contend that State Farm should have made efforts to contact the alleged phantom driver or other witnesses. However, the phantom driver (if he/she exists) was/is unknown. There were no other witnesses listed on the accident report and none have been identified in discovery.

"State Farm's duty was to undertake an investigation that was reasonable under the circumstances. **State Farm – cannot be faulted for not seeking out some unknown and reasonably unknowable person**." *Bannister*, 692 F.3d at 1132 (internal citation omitted) (emphasis added). State Farm's determination that Harrison is responsible for the accident is reasonable and is sufficient to defeat Plaintiff's claim of inadequate investigation.[17]

Even assuming that State Farm's investigation was inadequate, Plaintiff has failed to show material facts were overlooked or that a more thorough investigation would have produced relevant information which would have delegitimized State Farm's liability decision. Plaintiff's inadequate investigation theory is without merit, and summary judgment on the bad faith claim is warranted.

### 5. State Farm's Use of a Single Adjuster Does Not Establish Bad Faith.

Plaintiff alleges it was bad faith for State Farm to assign one adjuster to review and evaluate the Plaintiff's liability and UM/UIM claims. No controlling legal authority exists

---

[17] *See* **Ex. 9**, pg. 115:18-21, in which Pignato agrees that the conclusion that Harrison is responsible for this accident is not unreasonable.

in Oklahoma that prohibits having one adjuster handle both the first and third-party claims.[18] In *Garnett v. Gov't Employees. Ins. Co*., 2008 OK 43, 186 P.3d 935, the Oklahoma Supreme Court considered the duty of an insurer who insures both parties in an accident and concluded that the potential for a conflict of interest is not enough, instead, the plaintiffs must prove that the insurance company improperly handled the claims. In the present case, no evidence of tortious conduct by State Farm adjusters exists nor has there been any unreasonable delay, improper analysis or any action that could be reasonably perceived as tortious.

Rather than focusing on staffing issues such as *who* handles an insured's claims, Oklahoma law focuses on the reasonableness of "the insurer's actions." *Conti v. Republic Underwriters Ins. Co.*, 1989 OK 128, 782 P.2d 1357, 1360. Nothing was unreasonable about the manner in which State Farm staffed Plaintiff's claims.

State Farm permitted one adjuster to handle, review and evaluate Plaintiff's claims. As shown in *Duensing v. State Farm Fire & Cas. Co*., 2006 OK CIV APP 15, 131 P.3d 127, 138, "[a]n insurer's withholding of payment is not unreasonable or bad faith when there is a legitimate dispute concerning coverage and when there is no conclusive precedential legal authority on that issue." *Duensing*, 131 P.3d at 138, citing *Skinner v. John Deere Insurance Co*., 2000 OK 18, 998 P.2d 1219. The same analysis applies here. The use of the one adjuster to evaluate first and third-party claims is not unreasonable or in bad faith where there is no conclusive legal authority to the contrary.

---

[18] *See* **Ex. 9**, pgs. 54:13-56:17.

Plaintiff had the advice of legal counsel since almost immediately after the accident. At no time did Plaintiff's counsel allege that a conflict of interest existed, nor did Plaintiff's counsel request assignment of a different or another adjuster[19]. The staffing of Plaintiff's claims cannot form the basis for a bad faith claim. Summary judgment is appropriate.

### 6.  State Farm's Pending *Motion to Exclude* [Doc. 55].

State Farm filed a Motion to Exclude Reports, Testimony and Opinions of Gerard Pignato [Doc. 55] because Pignato's opinions do not meet the admissibility standards of *Daubert* and *Kumho* and that they also infringe on roles of the Court and the jury. State Farm cited examples of Pignato's opinions which support State Farm's position as a precaution in the event the Court denies its motion.

### C.    CONCLUSION

State Farm Mutual Automobile Insurance Company prays that this Court grant judgment in its favor on Plaintiff's breach of contract and extra-contractual (bad faith) claims and award such other relief as the Court deems just and proper.

---

[19] *See* **Ex. 3**, pg. 86:2-7 and **Ex. 9**, pg. 47:12-15.

Respectfully submitted,

**WILSON, CAIN & ACQUAVIVA**
300 Northwest 13th Street, Suite 100
Oklahoma City, OK 73103
Telephone:    (405) 236-2600
Facsimile:    (405) 231-0062

s/Joseph T. Acquaviva, Jr.
Joseph T. Acquaviva, Jr., OBA #11743
JTAcqua@wcalaw.com
Elizabeth A. Snowden, OBA #22721
beths@wcalaw.com
**ATTORNEYS FOR DEFENDANT,
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY**

## CERTIFICATE OF MAILING

__X__   I hereby certify that on the 19th day of August 2022, I electronically transmitted the attached document to the Clerk of the Court using the ECF Filing System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following registered participant(s) of the ECF System:

| | |
|---|---|
| Simone Fulmer | sfulmer@fulmersill.com |
| Harrison C. Lujan | hlujan@fulmersill.com |
| Jacob L. Rowe | jrowe@fulmersill.com |
| Andrea R. Rust | arust@fulmersill.com |
| Madison Botizan | mbotizan@fulmersill.com |

FULMER SILL PLLC
1101 N. Broadway Ave., Suite 102
Oklahoma City, OK 73103
**ATTORNEYS FOR PLAINTIFF**

_____ I hereby certify that on the _____ day of August, 2022, I filed the attached document with the Clerk of the Court and served the attached document by certified mail, return receipt requested, with proper postage prepaid thereon, to the following who are not registered participants of the ECF System:

 s/Joseph T. Acquaviva, Jr.
Joseph T. Acquaviva, Jr.
Elizabeth A. Snowden