**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| LYNNETTE MASON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-20-1217-D |
| | ) | ***Honorable Timothy D. DeGiusti*** |
| STATE FARM MUTUAL | ) | |
| AUTOMOBILE INSURANCE | ) | |
| CO., d/b/a STATE FARM | ) | |
| INSURANCE CO., | ) | |
| a Foreign For-Profit entity | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY'S SECOND MOTION FOR
SUMMARY JUDGMENT AND BRIEF IN SUPPORT [DOC. 56]**

Respectfully submitted,

/s/ *Andrea R. Rust*
Simone Fulmer Gaus, OBA #17037
Harrison C. Lujan, OBA #30154
Jacob L. Rowe, OBA #21797
Andrea R. Rust, OBA #30422
Madison Botizan, OBA #34615
FULMER SILL PLLC
1101 N. Broadway Ave., Suite 102
Oklahoma City, OK  73103
Phone:  (405) 510-0077
Fax:  (800) 978-1345
Email:  sfulmer@fulmersill.com
            hlujan@fulmersill.com
            jrowe@fulmersill.com
            arust@fulmersill.com
            mbotizan@fulmersill.com
**ATTORNEYS FOR PLAINTIFF**

Dated this 26th day of September, 2022.

## <u>TABLE OF CONTENTS</u>

**Objections to Exhibits Submitted with State Farm's Motion for Summary Judgment** ................................................................................................. 3

**Response to State Farm's Statement of Alleged Undisputed Material Facts ("UMFs")** ...................................................................................................... 3

**Additional Facts Precluding Summary Judgment** ......................................... 11

    History of State Farm's single adjuster claims handling practice ....................... 11

    What State Farm's UM Claim File Shows ............................................................ 13

    State Farm's Duties to a UM Insured When a Phantom Driver is Involved ....... 16

    What State Farm Knew About the Phantom Vehicle (from the Liability Claim File) ........................................................................................................ 16

    State Farm's Denial of Ms. Mason's UM Claim Based on Phantom Vehicle .... 20

**Argument and Authorities** ................................................................................. 21

**I.**    **Standard for Summary Judgment** .................................................................. 21

**II.**    **The focus of this bad faith action is not whether Ms. Mason was "legally entitled to recover" under her UM coverage, but rather, it is on State Farm's conduct in handling Ms. Mason's UM Claim** ................. 22

**III.**    **An Insurance bad faith case is based on the insurer's unreasonable, bad faith conduct, including the unjustified withholding of benefits under the policy.** ............................................................................................. 27

**IV.**    **Evidence in this case demonstrates that State Farm's conduct was illegitimate and unreasonable; thus, there is not a legitimate dispute** ......... 36

**CONCLUSION.** ..................................................................................................... 40

## TABLE OF AUTHORITIES

### *Cases*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) .......................................... 22

*Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080 (Okla. 2005) ........................... 23, 28, 32

*Bannister v. State Farm Mutual Automobile Ins. Co.*, 692 F.3d 1117, 1126-27
    (10th Cir. 2012) ........................................................................................... 36, 37

*Brown v. Patel*, 157 P.3d 117, 122 (Okla. 2007) ........................................................ 28

*Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1109 (Okla. 1991) ........................... 23, 27

*Buzzard v. McDaniel*, 736 P.2d 157, 159 (Okla. 1987) ........................................... 27, 29

*Cameron v. Travelers Homes & Marine Ins. Co.*, 2012 WL 5266172, *2
    (W.D.Okla.2012) .................................................................................................. 26

*Cantrell v. Amica Mut. Ins. Co.*, No. 08-CV-0546-CVE-PJC, 2009 WL
    3157338, n. 13 (N.D. Okla. Sept. 25, 2009) ....................................................... 23

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ................................................ 22

*Curtis v. Progressive Northern Ins. Co.*, 2022 WL 109003 .......................................... 25

*Edens v. The Netherlands Insurance Co.*, 834 F.3d 1116 (10th Cir. 2016) ................... 25

*Garnett v. Gov't Employees Ins. Co.* (GEICO), 2008 OK 43, 186 P.3d 935 ........... 34, 35

*Gray v. Phillips Petroleum Co.*, 858 F.3d 610, 613 (10th Cir. 1988) ............................ 22

*Haberman v. The Hartford Insurance Group*, 443 F.3d 1257 (10th Cir. 2006) ............. 37

*Lafferty, et al. v. State Farm Mutual Automobile Insurance Company*, District
    Court of Logan County, Case No. CJ-2017-223 ................................................. 11

*McCorkle v. Great Atlantic Ins. Co.,* 637 P.2d 583, 587 (Okla.1981) .............. 28, 37, 40

*McCoy v. Oklahoma Farm Bureau Mut. Ins. Co.*, 841 P.2d 568, 572 (Okla. 1992) ................................................................................................ 38, 40

*Morrison v. Stonebridge Life Ins. Co.*, 2015 WL 137261 ............................................. 25

*Mustain v. USF&G*, 925 P.2d 533 (Okla. 1996) ............................................................ 27

*Newport v. USAA*, 11 P.3d 190, (Okla. 2000) .................................................... 28, 29, 40

*Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993) ................... 28

*Shotts v. GEICO Gen. Ins. Co.*, 943 F.3d 1304, 1315 (10th Cir. 2019) ......................... 37

*Timberlake Const. Co. v. USF&G Co.*, 71 F.3d 335 (10th Cir. 1993) ..................... 28, 29

*United States Automobile Ass'n v. Bult*, 183 S.W.3d 181 (Ky. Ct. App. 2003) ........... 34

*Uptegraft v. Home Ins. Co.*, 662 P.2d 681, 684-685 (Okla. 1983) .......................... 24, 26

*Willis v. Midland Risk Ins. Co.*, 42 F.3d 607 (10th Cir. 1994) ...................................... 28

## *Rules*

Fed.R.Civ.P. 32(a)(3) .................................................................................................... 11

Fed.R.Civ.P. 56 .............................................................................................................. 22

Oklahoma Rules of Professional Conduct Rule 3.3(a)(3), ............................................. 30

## *Statutes*

36 O.S. § 1250.5(1) ....................................................................................................... 29

COMES NOW, Plaintiff Lynnette Mason ("Ms. Mason"), and submits her Response and Objection to *Defendant State Farm Mutual Automobile Insurance Company's Second Motion for Summary Judgment on Plaintiff's Breach of Contract and "Bad Faith" Claims and Brief in Support* [Doc. 56]. Ms. Mason filed the present lawsuit bringing a single claim for breach of the duty of good faith and fair dealing relative to State Farm's handling of her claim for benefits under her uninsured motorist coverage ("UM") following a wreck that occurred on November 4, 2015, involving a phantom driver (and non-party Lyndee Harrison), and State Farm's claims handling practice of having the same adjuster handle a third-party liability claim and first-party UM claim arising from the same automobile accident. State Farm has now moved for summary judgment claiming it is entitled to judgment as a matter of law because 1) Ms. Mason is not legally entitled to recover from the phantom driver, 2) there was a legitimate dispute as to whether Ms. Mason's claim was covered by her insurance policy with State Farm, 3) State Farm acted reasonably in its handling of Ms. Mason's UM claim, and 4) State Farm's use of a single adjuster to handle both the liability claim and UM claim arising from the November 4, 2015 wreck does not constitute bad faith.[1]

Notably, State Farm's Motion is largely based on evidence and legal theories it neither raised nor relied upon during the time it was handling Ms. Mason's UM claim and therefore, cannot now be used by State Farm to justify its claims decision. In fact, the

---

[1] State Farm also asserts it is entitled to summary judgment regarding Ms. Mason's underinsured motorist claim. However, these arguments are moot and not properly before the Court because Ms. Mason's claims in the instant litigation are focused squarely on her uninsured motorist claim regarding the phantom driver.

1

majority of "material facts" and supporting evidence provided by State Farm do not even come from its UM claim file, but rather from State Farm's liability claim file. Indeed, State Farm never investigated Ms. Mason's UM claim based on the position of State Farm's liability insured, Ms. Harrison, that a phantom driver caused the November 4, 2015 accident between Ms. Mason and Ms. Harrison. Despite acknowledging Ms. Harrison's phantom driver defense, and acquiescing in the potential that a jury could assess 10% fault on the phantom driver for the accident, State Farm failed to determine how such impacted Ms. Mason's UM claim and failed to even advise Ms. Mason of this potential avenue of recovery under her UM coverage. Moreover, despite having evidence that the phantom vehicle caused or contributed to the November 4, 2015 accident, State Farm's decision to deny Ms. Mason's UM claim premised on the phantom driver was based solely on a review of various court filings in the *Mason v. Harrison* litigation. This evidence served as the sole basis for State Farm's decision that Ms. Mason was not entitled to her UM benefits. Further, when State Farm was presented with Ms. Mason's UM claim based on the phantom driver, it never went back to see what State Farm itself had been doing in relation to the phantom driver – if they had, they would have realized they took one approach with their liability insured – believed her enough to defend on the basis of the phantom driver being at fault – yet failed to apply the same for the benefit of its UM insured, Ms. Mason.

This evidence and the reasoning underlying those decisions, as well as State Farm's single adjuster claims practice, are the focus of this bad faith lawsuit. Thus, the legal theories and arguments State Farm now makes cannot change the fact that, at the time State Farm was called upon to perform its contractual obligation to Ms. Mason, it failed to

2

conduct *any* investigation (let alone one that was full, fair, prompt, and unbiased) regarding the fault of the phantom driver, failed to uphold its duties and obligations to Ms. Mason as its UM insured, put the interests of itself and another insured (its liability insured, Ms. Harrison) ahead of Ms. Mason's interests, and had no reasonable basis for refusing to pay UM benefits to Ms. Mason. Based on the evidence presented herein, there are material questions of fact that make summary judgment improper.

## OBJECTIONS TO EXHIBITS SUBMITTED WITH
## STATE FARM'S MOTION FOR SUMMARY JUDGMENT

Ms. Mason would refer the Court to her separately filed Objection to Exhibits Submitted with State Farm's Second Motion for Summary Judgment (hereinafter, "Motion to Strike"). *See* Doc. 82. Ms. Mason incorporates the same as if fully set forth herein.

## RESPONSE TO STATE FARM'S STATEMENT OF ALLEGED
## UNDISPUTED MATERIAL FACTS ("UMFs")

Pursuant to and without waiving the arguments set forth in her Motion to Strike, and for the purpose of responding to State Farm's Motion *only*, the following numbered paragraphs of State Farm's "Statement of Uncontroverted Material Facts" ("UMFs") are undisputed: 1, 16, and 17. The following UMFs, though undisputed, are irrelevant and immaterial to the issues before the Court (*see*, Motion to Strike, Doc. 82): 12, 19, 20, 22, 23, 24, 25, 26, 27, 29, 30, 31, 33, and 35. As to the remaining UMFs, Ms. Mason denies that any of the below facts, either alone or considered together with other facts, are material or outcome determinative with respect to the Motion before the Court. To the extent such are considered material to the Motion, Ms. Mason further responds to those alleged UMFs:

**UMF No. 2:** Undisputed that Harrison contacted State Farm on November 5, 2015. The remainder of this UMF is irrelevant, immaterial, and speculative as to whether Harrison "denied the involvement of a phantom vehicle". *See* Doc. 82. Moreover, the UM claim was not opened until 12/28/2016, and there is no evidence in the UM claim file that State Farm relied on the Loss Report in making its liability decision for the UM claim. *See* Ex. 1, UM Claim Notes, SF-45 – SF-50, and at SF-49 (liability decision is noted as "V2 r/e V*1"). Further, the Loss Report reflects that Harrison ***did*** indicate the involvement of a third vehicle/phantom vehicle. *See* Ex. 2, 11/5/2015 Loss Report, at HARRISON-01188.

**UMF No. 3:** Undisputed, but irrelevant and immaterial. *See* Doc. 82. Moreover, the UM claim was not opened until 12/28/2016, and there is no evidence in the UM claim file that State Farm relied on this loss description in making its liability decision for the UM claim. *See* Ex. 1 (liability decision is noted as "V2 r/e V*1"); *see also*, Ex. 3, 12/5/2016 Loss Report, at SF-00186 (facts of loss noted as "reference claim #36-863W-245[2]. V2 r/e V*1" – in this scenario, Harrison is V2 and Mason is V*1. Further, there is no answer to the question regarding whether a phantom vehicle was involved).

**UMF No. 4:** Irrelevant and immaterial. *See* Doc. 82. Moreover, Defendant's Exhibit 11 does not support its contention that State Farm *received* the Collision Report on November 10, 2015. Rather, State Farm *requested* a copy of the Collision Report on that date. *See* Ex. 4, Liability Claim File, at HARRISON-494. Additionally, there is no evidence that State Farm considered the Collision Report when making its liability decision in the

---

[2] This claim number is for the med-pay claim under Don Richard's (owner of the vehicle driven by Mason at the time of the wreck) policy.

UM claim and there is no evidence that a decision-making adjuster ever reviewed the Collision Report. *See* Ex. 1.

**UMF No. 5:** Undisputed to the extent the quotation accurately reflects a portion of the referenced 11/11/2015 Liability Claim Note. However, such is irrelevant and immaterial. *See* Doc. 82. Moreover, the UM claim was not opened until 12/28/2016, and there is no evidence in the UM claim file that State Farm relied on this loss description in making its liability decision for the UM claim. *See* Ex. 1 (liability decision is noted as "V2 r/e V*1").

**UMF No. 6:** Undisputed that on November 12, 2015, State Farm made its liability decision in the Liability Claim as follows:

| 11-12-2015 - 1:03 PM CST | Performer: Wagner, Brianna | Office:EXPDO |
|---|---|---|
| File Note: Liability File Notes | | |
| Participant: | COL(Participant): | |
| Category: Liability | Sub Category: | |
| 100% NID FTC. Reported FOL V1 rear ended V2. | | |

*See* Ex. 4 at HARRISON-142. However, such is irrelevant and immaterial. *See* Doc. 82. The remainder of this UMF is disputed as there is no evidence that State Farm's liability decision in the UM Claim was based on review of the Collision Report or photos of Harrison's vehicle. *See* Ex. 1 (liability decision is noted as "V2 r/e V*1"). Moreover, up to that point, the facts of loss reported by Harrison all mentioned the involvement of a phantom driver. *See* Ex. 2; Ex. 4 at HARRISON-144. Further, no recorded statement was ever taken of Harrison (or Ms. Mason) regarding the accident prior to State Farm's original liability decision. *See* Ex. 5, Depo of Harmon, 205:10-206:6; Ex. 6, Depo of Tyner, 150:16-23. Also, Behara could not recall whether she relied upon this liability decision for the UM

claim and similarly could not recall what evidence she relied upon in making the liability decision in the UM claim. Ex. 7, Depo of Behara, 81:23-82:1; 82:13-83:3; 84:3-85:1.

**UMF No. 7:** Disputed, but irrelevant, immaterial, and misleading. *See* Doc. 82. The quoted portion is identical to the loss description in the 11/5/2015 Loss Report – including the same typo in spelling "neightborhood" [sic] – and indicates the involvement of a phantom driver. *See* Ex. 2; Ex. 4 at HARRISON-147; *see also*, Ex. 6 at 151:1-157:19. Moreover, the UM claim was not opened until 12/28/2016, and there is no evidence in the UM claim file that State Farm relied on this information in making its liability decision for the UM claim. *See* Ex. 1 (liability decision is noted as "V2 r/e V*1"), *compare* Ex. 4 at HARRISON-142 (liability decision noted as V1 rear ended V2) and Ex. 4 at HARRISON-122, ("Final: V1 exited on 12th St and Moore, 2 cars in front of V1, 1 vehicle made a left into a neightborhood [sic], the car behind the other locked brakes and V1 r/e V2").

**UMF No. 8:** Undisputed to the extent the UM file notes on December 29, 2016, the following liability decision:

```
12-29-2016 - 8:33 AM CST          Performer: Behara, Shelli                    Office:INJTULS
     File Note: Liability File Notes
     Participant:                                   COL(Participant):
     Category: Liability                                Sub Category:
Final: V2 r/e V*1
```

*See* Ex. 1 at SF-49. However, the remainder of this UMF is disputed as the UM claim was not opened until 12/28/2016 and there is no evidence in the UM claim file that State Farm relied on information in the Collision Report, photos, or Harrison's version of the accident, at the time of State Farm's liability decision in the UM file. *See* Ex. 1. Up to that point, the facts of loss reported by Harrison all mentioned the involvement of a phantom driver. *See*

Ex. 2; Ex. 4 at HARRISON-144; Ex. 6 at 151:1-157:19.  Further, no recorded statement was ever taken of Harrison (or Ms. Mason) regarding the accident prior to this liability decision. *See* Ex. 5 at 205:10-206:6; Ex. 6 at 150:16-23. Also, Behara could not recall whether she relied upon this liability decision for the UM claim and similarly could not recall what evidence she relied upon in making the liability decision in the UM claim. Ex. 7 at 81:23-82:1; 82:13-83:3; 84:3-85:1.

**UMF No. 9:** Irrelevant and immaterial as it pertains to Ms. Mason's underinsured motorist claim and not to Ms. Mason's UM claim which is the subject of this litigation. Moreover, this UMF is disputed. The referenced letter asks State Farm to pay Ms. Mason's $25,000 UM – which Mr. Gass uses to include underinsured claims. *See* Ex. 8, 1/3/2017 Letter, SF-237. Moreover, the letter specifically identifies the UM claim number as "UM/UIM Claim". *See* Ex. 8. Mr. Pignato's testimony in this regard was that he "thinks" Mr. Gass was contemplating an underinsured motorist claim. *See* Ex. 9, Depo of Pignato, 37:25-38:10. Furthermore, at this point, neither Ms. Mason nor Mr. Gass knew that Ms. Harrison had claimed the wreck was caused or contributed to by a phantom driver. Ex. 10, Depo of Gass, 14:6-15:18.

**UMF No. 10:** Undisputed, but irrelevant and immaterial as it pertains to Ms. Mason's underinsured motorist claim and not to Ms. Mason's uninsured motorist claim, which is the subject of the instant litigation. It is worth noting, however, that on December 28, 2016 – the day the UM Claim was opened and before receipt of the UM/UIM demand – that Adjuster Behara asserted that the UM/UIM claim would not exceed the available

liability limits. *See* Ex. 1 at SF-49, 12/28/16 at 9:23 a.m.  There is no evidence in the UM

Claim File indicating what evidence Behara bases this opinion on. *See* Ex. 1 at SF-45-50.

**UMF No. 11:** Undisputed to the extent the quotation accurately reflects the

referenced August 28, 2017, Liability Claim Note. However, such is irrelevant and

immaterial. *See* Doc. 82.  Moreover, Ms. Mason disputes the portions of this alleged UMF

which attempt to characterize the quoted information, are argumentative, speculative, and

do not constitute an assertion of "material fact", *i.e.*, "Harrison offered another and

different scenario" and "Harrison now claimed that Mason (V2) slammed on her brakes

for no reason". Furthermore, there is no evidence that State Farm relied on or considered

this information, or Harrison's alleged "inconsistencies", in the context of making its

liability determination in Ms. Mason's UM claim (or the Liability Claim for that matter)

or in denying Ms. Mason's UM claim based on the phantom driver. *See* Ex. 1 at SF-45-50;

*see also*, Ex. 11, Denial Letter and Ex. 4; Ex. 7 at 81:23-82:1; 82:13-83:3; 84:3-85:1.

**UMF No. 13:** Undisputed to the extent the quoted information accurately reflects

the referenced Response to Requests for Admission from June 3, 2018. However, such is

irrelevant and immaterial. *See* Doc. 82. Moreover, the referenced responses were signed

by Harrison's counsel, Mike Chitwood, not by Harrison herself. *See* Doc. 56-5,

HARRISON-1790. There is no evidence that State Farm relied on or considered this

information in the context of making its liability determination in Ms. Mason's UM claim

(or in the Liability Claim) or in denying Ms. Mason's UM claim based on the phantom

driver. *See* Ex. 1; *see also*, Ex. 11 and Ex. 4. Additionally, the UM Claim is completely

silent from September 9, 2016 until June 18, 2020 – a 33-month gap. *See* Ex. 1.

**UMF No. 14:** Undisputed to the extent the quoted testimony accurately reflects the testimony given by Harrison. However, Ms. Mason disputes the portions of this alleged UMF which attempt to characterize the quoted information, are argumentative, speculative, and do not constitute an assertion of "material fact", *i.e.*, "Harrison recanted her Admissions". There is no evidence that State Farm relied on or considered this information in the context of Ms. Mason's UM claim. Again, the UM Claim is completely silent for 33-months. *See* Ex. 1.

**UMF No. 15:** Irrelevant and immaterial. *See* Doc. 82. Moreover, Ms. Mason disputes this alleged UMF as it attempts to characterize the referenced information, as they are argumentative, speculative, and do not constitute an assertion of "material fact". There is no evidence that State Farm relied on or considered any of this alleged information in the context of its liability determination in Ms. Mason's UM claim (or the Liability Claim). *See* Ex. 1; Ex. 4; Ex. 11; Ex. 7 at 81:23-82:1; 82:13-83:3; 84:3-85:1; *see also*, Responses to UMF Nos. 2, 4, 5, and 6, *supra*.

**UMF No. 18:** Undisputed the quoted material is within the letter referenced in this UMF. However, Ms. Mason would refer the Court to the entirety of the letter as State Farm's UMF only quotes a portion of the same, as it speaks for itself. *See* Ex. 4. Moreover, Ms. Mason disputes this alleged UMF to the extent it seeks to claim that State Farm undertook an investigation into the phantom driver or that it assessed the evidence already in its possession regarding the phantom driver in relation to its liability/fault analysis prior to issuing the UM denial letter. There is no evidence that State Farm performed any analysis or investigation regarding the phantom driver after receiving Mr. Gass' June 18, 2020,

letter and prior to denying Ms. Mason's UM claim on July 27, 2020. *See* Ex. 1; Ex. 12, Depo of Kennedy, 3:13-5:10; 13:8-16; 15:8-16; 20:3-21:6; Ex. 6 at 200:12-201:15; 205:17-207:2; 208:14-20; 212:22-213:11: 214:20-214:13; 221:19-25. Rather, the sole bases of State Farm's decision to deny Ms. Mason's UM claim was Mr. Tyner's review of the Pretrial Conference Order, the Jury Instructions, the Journal Entry of Judgment, as well as Mr. Gass' June 18, 2020 letter. *Id.*; *see also*, Ex. 11.

**UMF No. 21:** Undisputed to the extent the information from the Collision Report is quoted accurately. However, such is irrelevant and immaterial. *See* Doc. 82. Moreover, there is no evidence that State Farm relied on or considered the Collision Report in making a liability determination in Ms. Mason's UM claim (or the Liability Claim). *See* Ex. 1. Additionally, there is no evidence that any decision-making adjuster ever reviewed the Collision Report prior to State Farm making its liability decision in Ms. Mason's UM Claim (or in the Liability Claim). Ex. 1; Ex. 4; Ex. 7 at 81:23-82:1; 82:13-83:3; 84:3-85:1.

**UMF No. 28:** Ms. Mason disputes the characterization of the cited UMFs as "Harrison's inconsistent statements" as they are argumentative, speculative, and do not constitute an assertion of "material fact". Furthermore, there is no evidence that State Farm relied on or considered any of this alleged "inconsistent statements" in the context of making its liability determination in Ms. Mason's UM Claim (or the Liability Claim) or in its decision to deny Ms. Mason's UM Claim. *See* Ex. 1; Ex. 4; Ex. 11; *see also*, Responses to UMF Nos. 2, 3, 5, 6, 7, 11, 13, and 14, *supra*.

**UMF No. 32:** Undisputed, but irrelevant and immaterial. *See* Doc. 82. Also, for clarity, the cited evidence allegedly supporting this UMF states only that Plaintiff did not

submit a proposed jury instruction requesting the jury determine whether the accident was caused by the negligence of an uninsured third party (phantom vehicle). *See* Doc. 56-17 at Responses to RFA Nos. 25 [sic] and 26 [sic].

**UMF No. 34:** This UMF is not supported by a citation to any evidence within the record, and, as such, is in violation of Fed. R. Civ. P. 56(c)(1). Subject to this objection, Ms. Mason does not dispute that the jury returned the Pink Verdict Form or that the jury instructions relative to the Pink Verdict Form are as stated in this UMF.[3] However, this UMF is irrelevant and immaterial. *See* Doc. 82.

### ADDITIONAL FACTS PRECLUDING SUMMARY JUDGMENT

**History of State Farm's single adjuster claims handling practice**

**Fact 1:** In the late 1990s, State Farm had a single adjuster handle both the first-party UM claim and the third-party liability claim arising from the same accident. This is also known as a "double-insured" or "double with" claim, which can occur when both the alleged tortfeasor and the person(s) injured as a result of the tortfeasor's negligent acts are insured under separate State Farm insurance policies. Ex. 5 at 61:3-6; 61:16-62:3; 62:4-9; 62:11-23; 63:6-15; 68:17-21; Ex. 13, Corp. Representative Depo of Jason Moore[4], 29:18-

---

[3] The undersigned is assuming that the referenced language beginning in sentence two of this UMF is from the Jury Instructions, but because the UMF does not cite to any specific evidence or exhibit, she can't be certain.

[4] This corporate representative deposition of State Farm occurred in the case of *Lafferty, et al. v. State Farm Mutual Automobile Insurance Company*, District Court of Logan County, Case No. CJ-2017-223. Pursuant to Fed.R.Civ.P. 32(a)(3), an adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4). Fed.R.Civ.P. 32.

32:11; 33:6-12; 37:7-38:18; 40:20-41:11; 43:11-44:5; 101:19-102:1; and Ex. 14, Exhibit 12 to Jason Moore Corp Rep Depo.

**Fact 2:** At some point after the late 1990s, State Farm divided its claims handling for automobile policies into separate units. Specifically, State Farm formed a new unit comprised of claims representative/adjusters who exclusively handled first-party UM claims. All third-party bodily injury claims were handled by a unit separate and apart from the UM unit. Ex. 5 at 63:16-23; 63:25-64:3; Ex. 13 at 29:18-32:11; 33:6-12; 37:7-38:18; 40:20-41:11; 43:11-44:5; 101:19-102:1; and Ex. 14.

**Fact 3:** As of October 12, 2005, State Farm believed there ***was a potential conflict of interest*** in having a single adjuster handle double-insured/double with claims arising from a single automobile accident where State Farm insured more than one vehicle/person involved in the accident. Thus, State Farm's claims handling practice was to have separate adjusters handle the first-party UM claim and the third-party liability claim in a double-insured situation. Ex. 13 at 92:14-93:21; 94:25-95:14; 101:19-102:1; and Ex. 14.

**Fact 4:** At some point thereafter, State Farm changed its claims handling practice and once again implemented the single adjuster practice. Ex. 5 at 68:2-6; 68:23-69:8; Ex. 13 at 97:13-98:5; 98:13-24; 99:5-20; 101:19-102:1; 102:2-104:15; Ex. 14 and Ex. 15, Exhibit 13 to Jason Moore Corp Rep Depo.

**Fact 5:** As of June 22, 2011, State Farm believed it was ***not*** a conflict of interest for a single adjuster to handle both a first-party UM claim and a third-party liability claim arising from the same automobile accident. Ex. 13 at 97:13-98:5; 98:13-24; 99:5-20; 101:19-102:1; and exhibit 12 to Jason Moore Deposition. Although this was State Farm's

new position, which resulted in new claims handling policies and practices for many of its automobile claims units, the Oklahoma specialty unit continued handling Oklahoma UM claims separately from third-party liability claims. Ex. 5 at 68:23-69:8; 71:11-24; Ex. 13 at 99:21-100:6; 101:19-102:1; and Ex. 14.

**Fact 6:** In approximately 2014, State Farm decided to close the Oklahoma UM units and transfer Oklahoma first-party claims to the claim handlers who had previously only been handling third-party bodily injury claims. Ex. 13 at 100:7-101:2; 101:19-102:1; and Ex. 14.

**Fact 7:** As of June 3, 2015, State Farm was still of the view that it was ***not*** a conflict of interest for a single adjuster to handle both a first-party UM claim and a third-party liability claim arising from the same automobile accident. Ex. 16, June 3, 2015 ACM on Double Insured Claims, MASON 12 PROD – MASON 13 PROD.

**What State Farm's UM Claim File Shows[5]**

**Fact 8:** On November 4, 2015, Ms. Mason was rear-ended by Lyndee Harrison (a non-party to the current action) and suffered injuries. *See* Doc. 1-2, Petition.

**Fact 9:** At that time, Ms. Mason had a personal automobile insurance policy issued by Defendant State Farm that carried uninsured/underinsured motorist ("UM") coverage in the amount of $25,000 per person. *See* Doc. 15, at p. 6, Stipulated Fact (D).

---

[5] The instant litigation asserts a bad faith claim against State Farm for its handling of Ms. Mason's UM claim based on the phantom driver. If considering *only* the UM Claim file (like we should be able to do because UM is a separate, independent first-party coverage *and* this was Ms. Mason's own Policy with State Farm) it reflects what follows in this subsection.

**Fact 10:** State Farm also insured Ms. Harrison under a separate automobile policy which provided liability limits of $250,000.00 per person. Ex. 1 at SF-49; Ex. 4 at HARRISON-118; Ex. 7 at 62:25-63:23; Ex. 5 at 162:8-15.

**Fact 11:** Over a year after receiving notice of the November 4, 2015 wreck, on December 28, 2016, State Farm opened UM claim number 36-0325-9F5 ("UM Claim) for Ms. Mason's injuries under Ms. Mason's policy, which was also assigned to Behara. Ex. 1 at SF-45 and SF-49.

**Fact 12:** That same day, Behara notes the following:

| 12-28-2016 - 9:23 AM CST | Performer: Behara, Shelli | Office:INJTULS |
|---|---|---|
| File Note: Injury | | |
| Participant: ANDREW GASS ATTORNEY AT LAW, LYNNETTE MASON | COL(Participant): 041(LYNNETTE MASON) | |
| Category: Injury | Sub Category: | |

Rec'd letter under d/w from attorney Gass requesting the UM adjustor's information.  Found this claim.  Sent LOA with my information.   D/W claim policy has $250K.  At this time, it does not appear it will exceed those limits.  Opened 045.

Ex. 1 at SF-49. There is no evidence in the UM Claim file indicating what evidence Behara relied upon in forming this opinion, even though Behara agrees that her decision-making should be documented in the claim file. Ex. 1; Ex. 7 at 70:14-22; 71:12-14. Moreover, Behara had not performed an evaluation of the UM claim (or the Liability Claim) as of the December 28, 2016, note entry. Ex. 7 at 76:8-80:10; 81:6-16; Ex. 1 at SF-49 – SF-50; Ex. 4 at SF-117; Ex. 17, Liability Auto Injury Evaluation.

**Fact 13:** On December 29, 2016, Behara notes the UM Claim as follows:

| 12-29-2016 - 8:33 AM CST | Performer: Behara, Shelli |
|---|---|
| File Note: Liability File Notes | |
| Participant: | |
| Category: Liability | |
| Final: V2 r/e V*1 | |

14

Ex. 1 at SF-49. Behara agrees that the police report, photos of the vehicles, statements from involved parties, are the things which would give her a full picture of what happened so to make a liability determination. Ex. 7 at 85:2-86:20; 87:6-14. Yet, there is nothing in the UM claim file indicating any of this information or documentation was reviewed before Behara made her liability decision in the UM Claim. Ex. 1. Moreover, Behara could not recall whether she relied on her liability decision in the Liability Claim and similarly could not recall what evidence she relied upon in making the liability decision in the UM claim. Ex. 7 at 81:23-82:1; 82:13-83:3; 84:3-85:1.

**Fact 14:** On January 3, 2017, Ms. Mason's attorney – Andrew Gass – issued a demand to State Farm for Ms. Mason's UM/UIM policy limits of $25,000.00. Ex. 8. Enclosed with the demand were various supporting documents, including all of Ms. Mason's medical records and bills in Mr. Gass' possession at that time. *Id*.

**Fact 15:** On January 11, 2017, Ms. Mason's UM claim was rejected by State Farm claiming its value fell within the available liability limits of Harrison's liability policy. Ex. 18, 1/11/2017 Letter, SF-201.

**Fact 16:** There is no activity in relation to the UM Claim between January 11, 2017, and September 4, 2017. Ex. 1 at SF-48.

**Fact 17:** On September 4, 2017, Ms. Mason renewed her UM demand. Ex. 19, 9/4/2017 UM Demand, SF-230 – SF-234.

**Fact 18:** State Farm did not respond to the same, despite an indication from Behara that she updated Ms. Mason's injury evaluation on October 5, 2017. *See* Ex. 1 at SF-47 and SF-48.

**Fact 19:** There is no activity in the UM Claim file for the next 33-months. Ex. 1 at SF-47 (no activity noted between October 5, 2017 and June 25, 2020).

**State Farm's Duties to a UM Insured When a Phantom Driver is Involved**

**Fact 20:** State Farm witnesses agree that a "phantom driver" is someone who is involved in causing or contributing to an accident, but has not or cannot be identified. Ex. 5 at 80:19-24; 81:23-82:8; 82:9-12; 82:13-20; 82:22-83:12; Ex. 6 at 44:11-45:15.

**Fact 21:** State Farm witnesses also agree that if a phantom driver bears any responsibility, even 1% for causing an accident with a State Farm UM insured, then UM benefits are triggered. Ex. 5 at 187:16-21; Ex. 6 at 44:11-45:21; 49:20-50:6.

**Fact 22:** State Farm agrees that when an insurance company is made aware of facts indicating the possibility of a phantom driver being involved in causing an accident, State Farm is obligated to investigate what role the phantom driver played and then determine the level of responsibility that belongs on that phantom driver. Ex. 5 at 75:8-18; 76:7-19; 77:12-18; 77:19-78:2; 78:4-9; 83:13-25; 85:9-86:12; 88:1-3; Ex. 6 at 60:13-61:2.

**What State Farm Knew About the Phantom Vehicle (from the Liability Claim File)[6]**

**Fact 23:** On November 5, 2015, State Farm received notice of the wreck from Lyndee Harrison. State Farm's Loss Report notes the loss description as follows:

---

[6] Ms. Mason asserts that she should not have to piece together what happened in her UM Claim by relying on information contained within the Liability Claim. However, most of State Farm's alleged UMFs came from the Liability Claim. *See* Doc. 56 at pp. 14-22. Should the Court decline to strike documents and UMFs (*See* Motion to Strike, Doc. 82) which pertain solely to information contained within the Liability Claim, Ms. Mason includes this subsection to show that even if one must rely on the Liability Claim file to "fill in the blanks" of what happened regarding the UM Claim (which Mason should not have to do), such does not support State Farm's quest for summary judgment. Further, it is worth noting that State Farm originally objected to producing the Liability Claim file in the instant litigation based primarily on relevance.

Loss Description     **V1 EXITED ON 12TH ST AND MOORE, 2 CARS IN FRONT OF V1, 1 VEHICLE MADE A LEFT INTO A NEIGHTBORHOOD, THE CAR BEHIND THE OTHER LOCKED BRAKES AND V1 HIT V2**

Ex. 2. Such indicates the involvement of an unknown vehicle, *i.e.*, a phantom driver. *Id*.

**Fact 24:** On November 11, 2015, State Farm noted that Ms. Harrison "indicated another [vehicle] ahead of [Ms. Mason] slammed on their brakes causing [Ms. Mason] to stop suddenly and [Ms. Harrison] to [rear-end] them. Lyndee stated she was cited for [following too closely]. Established liability." Ex. 4 at HARRISON-144. Once again, Harrison indicates a phantom driver played a role in the collision. *Id*.

**Fact 25:** That same day, State Farm questions what caused "the other vehicle" to slam on their brakes. Ex. 4 at HARRISON-144 at 3:06 pm. State Farm never answered this question. Ex. 4; Ex. 6 at 168:1-23.

**Fact 26:** On November 12, 2015, State Farm notes: "100% [on Harrison] [following too close]. Reported [facts of loss] V1 rear-ended V2." Ex. 4 at HARRISON-142. State Farm eliminates any mention of a phantom driver as previously described by Harrison. *Id*.; compare Ex. 2 and Ex. 4 at HARRISON-144.

**Fact 27:** No recorded statement was taken of Ms. Harrison (or Ms. Mason) prior to State Farm's liability determination on November 12, 2015. Ex. 5 at 205:10-206:6. Moreover, there is no evidence that anyone at State Farm reviewed the Collision Report or photos of the damaged vehicles prior to making the liability determination. There is also no evidence that Harrison was informed of State Farm's liability determination. Ex. 4. According to State Farm's claims handling guidelines, a recorded statement should be

taken when the evidence of how a collision occurred conflicts. Ex. 20, ACM, MASON15PROD-MASON20PROD at 16-17.

**Fact 28:** On November 23, 2015, liability claim number 36-7L60-727 ("Liability Claim") is opened by State Farm under Ms. Harrison's policy for the claims against Ms. Harrison associated with the harms and losses suffered by Ms. Mason in the wreck. Ex. 4 at HARRISON-140; Ex. 21, 11/23/2015 Letter, HARRISON-1256-1259.

**Fact 29:** On February 26, 2016, the Liability Claim is noted as follows:

| | | |
|---|---|---|
| 02-26-2016 - 12:49 PM EST | Performer: Davidson, Barbara | Office:INJATL |
| File Note: OK injury OAR | | |
| Participant: LYNETTE MASON | COL(Participant): 100(LYNETTE MASON) | |
| Category: Injury | Sub Category: | |

FINAL: V1 EXITED ON 12TH ST AND MOORE, 2 CARS IN FRONT OF V1, 1 VEHICLE MADE A LEFT INTO A NEIGHTBORHOOD, THE CAR BEHIND THE OTHER LOCKED BRAKES AND V1 r/e V2

Ex. 4 at HARRISON-122. This description is identical to the description provided in the initial Loss Report. *See* Ex. 2.

**Fact 30:** On March 30, 2016, State Farm claims specialist, Shelli Behara, was assigned to the Liability Claim. Ex. 4 at HARRISON-121.

**Fact 31:** On September 25, 2017, Ms. Mason files suit against Harrison regarding the November 4, 2015 accident. Ex. 22, Petition from *Mason v. Harrison*.

**Fact 32:** On September 18, 2018, Behara notes the Liability Claim file as follows: "Originally liability was not in dispute; however, during [Harrison's] deposition, she blamed a phantom vehicle for pulling out in front of [Mason] causing [Mason] to slam on her brakes and [Harrison] to slam on her brakes. [Attorney Chitwood] believes at trial we could potentially get a liability percentage set off." Ex. 4 at HARRISON-104-105.

**Fact 33:** On September 24, 2018, the Liability Claim file notes the following: "[Facts of Loss]: V1 r/e V2. Insured alleges a vehicle cut in front of [Mason] and caused the accident. Defense will point to the phantom vehicle as a defense which may get some % of fault apportioned away from [Harrison]. However, for analysis and evaluation, 100% liab is assumed. There are no other witnesses to support the phantom vehicle. [Mr. Chitwood] notes maybe 10% fault would be apportioned and that is a long shot at best." Ex. 4 at HARRISON-102-103.

**Fact 34:** On October 5, 2018, Behara notes the Liability Claim file: "Rec'd Motion to Reset Status of [sic] Conference filed by [Mr. Gass]. It states, 'Defendant did not appear at first setting of her deposition. When deposed, [Harrison] described a third party that was at fault,' therefore, [Mason] is requesting another Status Conference." Ex. 4 at HARRISON-100.

**Fact 35:** The *Mason v. Harrison* case preceded to jury trial on September 23, 2019. Ex. 4 at HARRISON-91 – HARRISON-93.

**Fact 36:** State Farm's Liability Claim file notes state that Harrison testified at trial that a "third vehicle pulled from her right and cut in front of [Mason's] vehicle causing [Mason] to stop suddenly and [Harrison] was unable to stop and hit [Mason]. [Harrison] testified there was nothing [Mason] could have done differently." Ex. 4 at HARRISON-91 – HARRISON-93. For the first time, State Farm notes what Ms. Mason had to say about how the accident occurred: "[Mason] testified the vehicle in front of her was stopped for at least 6 seconds & [Mason] was stopped behind it waiting for it to turn left & was hit from behind, [Mason] didn't know what went on behind her." Ex. 4, at HARRISON-92.

19

**Fact 37:** On October 3, 2019, State Farm received a post-trial summary from Mr. Chitwood – State Farm's staff counsel who represented Harrison in *Mason v. Harrison*. State Farm noted that Mr. Chitwood spoke with the jury Forewoman and another juror who stated they thought "that [Mason] should have spent more time on who was at fault for loss." Ex. 4 at HARRISON-90 – HARRISON-91.

**Fact 38:** At no time during the life of the Liability Claim did State Farm undertake an analysis or investigation to assess how the evidence of the phantom driver from Ms. Harrison would impact Ms. Mason's UM claim. Ex. 1. Moreover, State Farm never informed Ms. Mason that she may have a UM claim based upon Harrison's testimony that a phantom driver was the cause of the accident. Ex.1; Ex. 9 at 107:12-110:9. Further, there is no evidence in the Liability Claim file that State Farm investigated the evidence provided by Harrison regarding the phantom driver, or that State Farm assessed such evidence in relation to its liability/fault determination. Ex. 4 at HARRISON-89 – HARRISON-148; Ex. 9 at 107:12-110:9.

**State Farm's Denial of Ms. Mason's UM Claim Based on Phantom Vehicle**

**Fact 39:** On June 18, 2020, Mr. Gass asserted a UM claim for Ms. Mason's $25,000 policy limits based on the evidence provided by Ms. Harrison that the "driver of [a] third vehicle" was the cause of the November 4, 2015 wreck, and that said driver is unidentified. Ex. 23, 6/18/2020 Letter, SF-645.

**Fact 40:** On June 29, 2020, State Farm Team Manager Brett Tyner noted the UM Claim file as follows:

Ms. Mason's attorney has recently written to present a UM demand associated with the "phantom" vehicle discussed by Ms Harrison during the pendency of the third-party lawsut - Mason vs. Harrison.
The attorney states "the explanation of the defense verdict is 'the driver of the third vehicle' referred to by Lyndee Harrison.  The medical showed the 11/4/15 collision caused Ms. Mason's medical and surgical treatments."
The attorney's statements are not consistent with my understanding regarding our assessment of liability in this case; notwithstanding defendant Harrison's statements made during the pending suit.   The attorney's statements are not consistent with my understanding regarding the medical issues raised in the lawsuit or the basis for the defense verdict generally.
I am unable to locate a copy of plaintiff's statement with respect to liability via depo summary.
I called DA Chitwood to inquire regarding the basis for the defense verdict given our assessment of liability on the V2D who rear-ended the stopped vehicle operated by V1.

Ex. 1 at SF-46 – SF-47.

**Fact 41:** On July 5, 2020, Mr. Tyner notes that he reviewed copies of the Pretrial Conference Order and Jury Instructions from the *Mason v. Harrison* lawsuit on OSCN, and that he confirmed the jury returned a pink verdict form. Based solely on this information, Mr. Tyner concludes that the jury verdict does not reflect the conclusion drawn by Mr. Gass' letter. Ex. 1 at SF-46. He does not document any investigation into the role the third vehicle/phantom vehicle played in causing the accident between Ms. Mason and Ms. Harrison, nor does he document any assessment of what role (if any) the third vehicle played in causing the accident. *Id*. at SF-46 – SF-47. Additionally, Mr. Tyner does not review what the Liability Claim file notes say with regard to the 10% assessment of potential fault on the phantom driver. Ex. 6 at 200:12-201:15; 205:17-207:2; 208:14-20; 212:22-213:11: 214:20-214:13; 221:19-25.

**Fact 42:** On July 27, 2020, State Farm rejected Ms. Mason's UM claim based on the phantom driver. Mr. Tyner asserted that because the jury in *Mason v. Harrison* did not find the phantom driver to be at fault, based on his review of select pleadings from that case, that Ms. Mason's claim for her UM benefits failed. Ex. 11.

<u>**ARGUMENT AND AUTHORITIES**</u>

**I.    Standard for Summary Judgment**

21

Summary judgment is only appropriate where there is no dispute of material facts and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The movant always bears the initial responsibility of informing the district court of the basis for its motion which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When presented with a summary judgment motion, the Court must determine whether there "are any genuine factual issues that properly can be resolved only by the finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When evaluating a motion for summary judgment, the Court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988).

## II.     The focus of this bad faith action is not whether Ms. Mason was "legally entitled to recover" under her UM coverage, but rather, it is on State Farm's conduct in handling Ms. Mason's UM claim.[7]

Without indicating any justification for why it made the decision it did on Ms. Mason's UM claim based on the phantom driver asserted by State Farm's liability insured,

---

[7] As an initial matter, Ms. Mason has asserted one cause of action in the instant litigation – breach of the duty of good faith and fair dealing. *See* Doc. 1-2, Petition, ¶¶ 44-56 ("Bad Faith Breach of Contract Against Defendant State Farm"). Contrary to State Farm's assertion, Ms. Mason did not assert a breach of contract claim in this litigation. *Id.* As such, State Farm's first proposition (Doc. 56 at pp. 24-28 – ECF page numbering) regarding Ms. Mason's "breach of contract claim" is moot and not subject to a ruling by the Court. Accordingly, the instant brief will not address the same. However, the undersigned does want to advise the Court that the Joint Status Report mentions a breach of contract claim in Plaintiff's Preliminary Statement. *See* Doc. 15, pp. 1-3. Such was an error by the undersigned.

State Farm argues that Ms. Mason does not have a valid uninsured ("UM") motorist claim against the phantom driver, and therefore, is not legally entitled to recover against the phantom driver. In an attempt to support this assertion, State Farm relies on Ms. Mason's testimony **in this case** that she is not aware of any facts that support Ms. Harrison's claim that a phantom driver caused or contributed to the November 4, 2015 collision and that she did not believe Harrison's testimony regarding a phantom driver. In so arguing, State Farm wholly ignores Oklahoma bad faith law recognizing that the decisive question in a bad faith case is whether the insurer had a "good faith belief, *at the time its performance was requested*, that it had a justifiable reason for withholding payment under the policy". *Buzzard v. Farmers Ins. Co., Inc.*, 824 P.2d 1105, 1109 (Okla. 1991)(emphasis in original). Thus, an insurer ***must defend its claims handling position with only the facts and claims position it actually relied upon in denying the claim***. *Buzzard*, 824 P.2d at 1114 (emphasis added). Moreover, "an insurance company [may] not rely on information…obtained after denying a claim to support that denial." *Cantrell v. Amica Mut. Ins. Co.*, No. 08-CV-0546-CVE-PJC, 2009 WL 3157338, n. 13 (N.D. Okla. Sept. 25, 2009) (attached as Ex. 24). In other words, an insurance company cannot contrive a claims position once litigation is commenced in order to justify its claims handling decisions. *See Badillo v. Midcentury Ins. Co.*, 121 P.3d 1080 (Okla. 2005); *Newport v. USAA*, 11 P.3d 190 (Okla. 2000).

Moreover, when presenting a claim for UM coverage benefits, the words "legally entitled to recover" simply mean that the insured must be able to make a showing of fault on the part of the owner or operator of an uninsured motor vehicle and that she has suffered

damages.[8] *Uptegraft v. Home Ins. Co.*, 662 P.2d 681, 684-85 (Okla. 1983). Fault or negligence may be established through circumstantial evidence and the reasonable inferences that may be drawn therefrom. *Id*. It is disingenuous for State Farm to claim that Ms. Mason is not legally entitled to recover against the phantom driver when State Farm knew the day after the accident that Ms. Harrison blamed the phantom driver for causing the accident. Even so, there is no evidence that State Farm ever actually assessed or investigated the involvement of the phantom vehicle based on Harrison's statements prior to making its original liability determination. However, years later when Harrison testified under oath that a phantom vehicle was to blame, State Farm did not hesitate to defend Harrison with that evidence – even though the same evidence was never utilized by State Farm in attempting to honor its duties and obligations to its UM insured, Ms. Mason. Additionally, State Farm's own internal documents prove that it gave credence to Ms. Harrison's testimony that a phantom driver was at least partially to blame for the collision between Ms. Harrison and Ms. Mason – and that, although State Farm thought it was a "long shot", that a jury could assess 10% responsibility to the phantom driver. According to State Farm witnesses, even 1% of responsibility on the phantom driver, would trigger Ms. Mason's UM coverage relative to the phantom driver. Surely, based on this, Ms. Mason has met her burden of showing that she is entitled to coverage under the insurance policy at issue.

---

[8] State Farm does not contend that Ms. Mason did not suffer damages as a result of the November 4, 2015 accident. *See* Doc. 56.

State Farm next argues that Ms. Mason cannot establish a breach of the underlying contract, *i.e.*, insurance policy, and therefore, cannot prevail on her bad faith claim. In support of this contention, State Farm relies primarily on two unpublished cases: *Curtis v. Progressive Northern Ins. Co.*, 2022 WL 109003 and *Morrison v. Stonebridge Life Ins. Co.*, 2015 WL 137261 – neither of which pertain to UM coverage. Moreover, both *Curtis* and *Morrison* contained claims for breach of contract, in addition to bad faith claims – which is not the case here, as Ms. Mason has only asserted a claim for breach of the duty of good faith and fair dealing. The present case is also distinguishable from *Edens v. The Netherlands Insurance Co.*, 834 F.3d 1116 (10th Cir. 2016), another case cited by Defendant and one which pertains to UM coverage. In *Edens*, the Tenth Circuit found no error where the trial court dismissed a bad faith claim when the accident was *not covered by the insurance policy* as a matter of law. *Id.* at 1128 (emphasis added). The *Eden* court found that because plaintiff did not meet the definition of insured under the applicable insurance policy, the accident for which she sought payment was not covered by the policy and therefore, she could not maintain a bad faith claim. Such is not the case here.

To the extent State Farm has relied on these cases for the general premise that Ms. Mason must establish that the insurance policy covered the collision, Ms. Mason does not disagree. However, State Farm's denial of Ms. Mason's UM claim based on the phantom driver was not premised on the accident not being a covered loss under the Policy. *See* Ex. 11. Moreover, to establish breach of an insurance contract, "Plaintiff[] need only show that a contract existed, that they are entitled to payment (in this case, that a covered loss occurred), and that Defendant refused payment, thereby breaching its promise to pay sums

25

due under the policy." *Cameron v. Travelers Homes & Marine Ins. Co.*, 2012 WL 5266172, *2 (W.D.Okla.2012) (citing *Uptegraft*, 662 P.2d at 684).

The State Farm policy issued to Ms. Mason provides for UM coverage as follows: "***We*** will pay compensatory damages for ***bodily injury*** an ***insured*** is legally entitled to recover from the owner or driver of an ***uninsured motor vehicle***…" *See* Ex. 25, Insurance Policy, SF-803 – SF-845, at SF-830 (bold and italic in original indicating defined terms). As applicable here, an "uninsured motor vehicle" under the Policy encompasses land motor vehicles that are (1) not insured or bonded for bodily injury liability at the time of the accident (i.e., uninsured) or (3) the owner and driver of the motor vehicle remain unknown. *See* Ex. 25 at SF-830. State Farm witnesses agree that a phantom driver/vehicle that is unknown and is alleged to have caused or contributed to an accident with a State Farm UM insured is presumed to be uninsured for purposes of UM coverage under the Policy. Moreover, there is no dispute that the identity of the phantom driver testified to by Ms. Harrison is and remains unknown and that Ms. Harrison testified that the phantom driver caused (or at the very least contributed) to the accident that occurred between Ms. Harrison and Ms. Mason on November 4, 2015. Additionally, there is no dispute that State Farm refused payment of UM benefits to Ms. Mason based on the phantom driver. As such, Ms. Mason has surely proven that a contract existed, that the loss caused by the phantom driver was covered under the Policy, and that State Farm breached the same by refusing to pay Ms. Mason's UM benefits.

Furthermore, the question of whether an insurance company has acted in bad faith rests on the intent and reasonableness of the ***insurer's actions*** in denying coverage, and

whether an insured is legally entitled to recover under a policy of insurance is not the controlling issue in a bad faith action based on a denial of coverage. *Buzzard v. McDanel*, 736 P.2d 157, 159, n.3 (Okla. 1987). Rather, the bad faith issue turns on "whether [the insurer], at the time [the claim was made], was in possession of information to establish that its refusal to pay was in good faith." *Id*. As set forth below, State Farm fails to provide justification for the actions it took to establish its refusal to pay Ms. Mason's UM claim based on the phantom driver and instead focuses on post-litigation theories of whether Ms. Mason was "legally entitled" to UM coverage and whether Ms. Mason has established a breach of the insurance policy to support its Motion for Summary Judgment.

III.   **An insurance bad faith case is based on the insurer's unreasonable, bad faith conduct, including the unjustified withholding of benefits under the policy.**

Because Ms. Mason has made a showing of entitlement to coverage under the terms of the insurance policy, such would have triggered State Farm's duty to "conduct an investigation reasonably appropriate under the circumstances." *Buzzard v. Farmers Ins. Co., Inc.*, 824 P.2d 1105, 1109 (Okla. 1991).[9] Under Oklahoma law, which governs this diversity case, "[t]he essence of an action for breach of the duty of good faith and fair dealing 'is the insurer's unreasonable, bad-faith conduct, including the unjustified

---

[9] Because Oklahoma law requires than an insurance company immediately begin to determine its UM obligations to a UM insured upon learning of circumstances that might give rise to UM coverage, State Farm was obligated, upon learning of Ms. Mason's injuries and of the involvement of a phantom driver, to begin determining what its UM obligations were – which would include advising Ms. Mason of her right to assert a UM claim based on the phantom driver. *See Mustain v. USF&G*, 925 P.2d 533 (Okla. 1996); *Buzzard*, *supra*. That obligation to act on behalf of Ms. Mason under the UM coverage is just as important as State Farm's obligation to its liability insured, Ms. Harrison.

withholding of payment due under a policy, and if there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case.'" *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla.2005) (quoting *McCorkle v. Great Atlantic Ins. Co.,* 637 P.2d 583, 587 (Okla.1981)). Thus, in order for Ms. Mason to establish a cause of action for bad faith against State Farm she "must present evidence from which a reasonable jury could conclude that [State Farm] did not have a reasonable good faith belief for withholding payment of [Ms. Mason's] claim." *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993).

The facts here cast doubt on any good faith justification State Farm might have had in its handling of Ms. Mason's UM claim. When State Farm learned of the circumstances regarding Ms. Mason's wreck and injuries, it had the duty to "conduct an investigation reasonably appropriate under the circumstances" and promptly pay the claim unless it had a reasonable belief that the claim was either "legally or factually insufficient." *Newport v. USAA*, 11 P.3d 190, 195 (Okla. 2000). State Farm was obligated to act reasonably and fairly with its insured in meeting its contractual obligations, conducting a thorough, fair and unbiased investigation, analysis and evaluation of the UM claim. *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607 (10th Cir. 1994); *Timberlake Const. Co. v. USF&G Co.*, 71 F.3d 335 (10th Cir. 1993); *Brown v. Patel*, 157 P.3d 117, 122 (Okla. 2007); *Newport*, 11 P.3d at 195; *Buzzard v. Farmers Ins. Co., Inc.*, 824 P.2d 1105 (Okla. 1991). Importantly, **an insurance company's denial of a UM claim without first conducting a thorough and**

28

**fair investigation and evaluation of that claim, including damages, is evidence of bad faith conduct**. *Newport*, 11 P.3d at 195 (emphasis added). Additionally, Oklahoma law requires an insurer to advise an insured who is making a claim about pertinent coverages that might apply under the policy and assist the insured in making the claim. *See*, OKLA. STAT. tit. 36, § 1250.5(1).

As provided herein, the sole basis of State Farm's claims handling decision to reject Ms. Mason's UM claim was a review of various court filings from the case of *Mason v. Harrison*. Any and all other evidence State Farm now cites in support of its Motion is irrelevant and inadmissible. *See* Motion to Strike, Doc. 82. This means that State Farm cannot rely on any other theory in an effort to proclaim that its claims handling of Ms. Mason's UM claim was "reasonable". Moreover, in evaluating the reasonableness of State Farm's actions, such must be done in light of State Farm's knowledge at the time. *See Timberlake*, 71 F.3d at 344 (evaluating reasonableness "in light of the facts known or knowable to [the insurer] at the time it denied [the insured's] claim" citing *Buzzard v. McDaniel*, 736 P.2d 157, 159 (Okla. 1987)).

Here, State Farm knew as early as the day after the November 4, 2015, accident that its liability insured, Ms. Harrison, claimed a phantom driver caused or contributed to the accident with Ms. Mason. State Farm also knew if the phantom driver bore any responsibility – even 1% - then Ms. Mason's UM benefits would be triggered. Upon learning of the potential involvement of the phantom driver, State Farm was duty bound to advise its UM insured, Ms. Mason, of the pertinent coverages applicable to the phantom driver – which it never did. Further, upon learning of the phantom driver, State Farm was

required to immediately begin an investigation into what role the phantom driver played in causing the accident and determine the fault attributable to the phantom driver – which it never did. State Farm's failure to do so was unreasonable and unfair to Ms. Mason, and is evidence State Farm breached its duty of good faith and fair dealing owed to Ms. Mason.

Moreover, almost three (3) years after the accident, State Farm learned that its liability insured, Ms. Harrison, testified under oath that a phantom driver caused the accident between Ms. Mason and Ms. Harrison. This evidence was credible enough for State Farm (and its employee attorney representing Ms. Harrison) to take the position that a jury could assess 10% fault to the phantom driver for causing the accident between Ms. Mason and Ms. Harrison. Despite this, State Farm still did not advise Ms. Mason that her UM coverage might apply based on the position of its liability insured, Ms. Harrison. Likewise, State Farm again did not begin an investigation in regards to how the phantom driver might impact Ms. Mason's UM Claim. Instead, State Farm remained silent in its communications with Ms. Mason and continued to ignore the duties and obligations it owed to Ms. Mason with respect to her UM Claim – all while knowing Harrison (and her counsel) would be asserting the same as a defense against Ms. Mason's claims in *Mason v. Harrison*.[10] Simply put, State Farm was willing to advance the phantom driver defense for the benefit of its liability insured without any indication it considered that doing so

---

[10] "A lawyer shall not knowingly offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence that the lawyer reasonably believes is false." Rule 3.3(a)(3), Oklahoma Rules of Professional Conduct.

would be to the detriment of its UM insured. By doing so, State Farm left Ms. Mason in peril of not receiving anything – which is exactly what ended up happening.

In addition, State Farm's single adjuster practice – which was utilized in this case – casts even more doubt on the reasonableness of State Farm's handling (and ultimate rejection) of Ms. Mason's UM claim based on the phantom driver. From approximately 1997 until 2011, all (or nearly all) Oklahoma UM claims were handled in special units separate and apart from liability claims. During that time, State Farm's claims handling philosophy was that, in a double-insured situation, a single adjuster should **not** handle both the UM claim and the liability claim arising from the same car accident because such ***created a potential conflict of interest***. In 2011, however, State Farm took the position that it was ***not a conflict of interest*** for one adjuster to handle both the UM claim and the liability claim arising from the same car accident.

The problem with the single adjuster practice is obvious and stems from the stark differences between a UM claim and a liability claim, as well as the duties State Farm owes to its insured in those respective claims. Mason contends that the single adjuster practice created a claims handling environment in which the assigned adjuster could not comply with the duties owed to Ms. Mason and that when State Farm became aware of Harrison's position that a phantom driver caused the accident, such resulted in a conflict of interest.

Under Oklahoma law, the purpose of UM coverage is to fully compensate an insured who is injured by a third-party that is either uninsured or underinsured. In this respect, an Oklahoma UM claim must be handled independently and without regard to whether or not there is a liability claim. Thus, once the Oklahoma UM insurer receives notice of the UM

insured's injury, the insurer must immediately begin to investigate its insured's UM claim. This includes considering any and all possible bases for the application of UM coverage, including a situation where a phantom driver may be at fault. The UM insurer is required to do this so it can promptly pay its insured the value of the claim. During its investigation, the Oklahoma UM insurer is required to communicate with its insured and to assist the insured with her claim. And, of course, the UM insurer owes a duty of good faith and fair dealing to the UM insured in the handling of a UM claim – unlike a liability insurer dealing with a third-party claimant (in this case, Ms. Mason in relation to her liability claim against Ms. Harrison). The liability insurer owes a duty to its liability insured to avoid exposing the liability insured to any potential excess exposure over and above the liability limits. *See*, *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1095-1096.

Here, shortly after receiving notice of the wreck, State Farm opened the Liability Claim under Harrison's policy for claims brought by Ms. Mason against Harrison for the harms and losses Ms. Mason suffered in the wreck. The Liability Claim was eventually assigned to Behara. State Farm's obligation to Harrison could be satisfied by resolving Ms. Mason's bodily injury claim within Harrison's liability policy limits and securing a release from Ms. Mason. On the other hand, as the adjuster assigned to Ms. Mason's UM claim, Behara was required to promptly determine the amount of money it would take to fully compensate Ms. Mason for the harms and losses caused by Harrison (or any other responsible party, here, the phantom driver) – and was required to do so without regard to any other insurance, including Harrison's liability coverage. Over the life of the Liability claim, State Farm kept its promise to Harrison by offering sums to Ms. Mason that were

within Harrison's liability policy limits and, upon learning that Harrison blamed a phantom driver for causing the accident, acknowledged and used such in defense of Harrison.

However, as to Ms. Mason's UM claim, there is ***no evidence that State Farm acted to honor its separate promises, duties, and obligations owed to Ms. Mason*** under her own policy of insurance with State Farm. When presented with information that a phantom driver caused the accident between Ms. Mason and Ms. Harrison, and despite knowing that if the phantom driver bore just 1% of fault for the accident that Ms. Mason's UM benefits would be triggered, State Farm did nothing. It did not advise Ms. Mason that her UM coverage might apply based on the involvement of a phantom driver, or assist her in making a claim. It never investigated what role the phantom driver played in the accident nor determine what level of fault could be attributed to the phantom driver. Instead, State Farm stayed silent. Moreover, when State Farm learned that its liability insured had testified under oath to that the phantom driver caused the accident, State Farm took the position that the phantom driver could be 10% at fault – which would result in minimizing Harrison's exposure. At that point, if not earlier, State Farm's adjuster found herself in a conflict of interest – yet nothing changed. State Farm still did not advise Ms. Mason that her UM coverage might apply based on Harrison's phantom driver defense, and did not launch an investigation into the impact the phantom driver might have on Ms. Mason's access to her UM benefits. Instead, State Farm continued to ignore its duties and obligations to Ms. Mason. By doing so, State Farm left its UM insured in peril of not receiving the benefits to which she was owed. By not pursuing an investigation into the phantom driver, and failing

to advise its UM insured of the applicability of UM coverage premised on the phantom driver, Ms. Mason asserts that State Farm breached its duty of good faith and fair dealing.

Moreover, contrary to State Farm's assertion in its Motion, Ms. Mason is not asserting that it was per se bad faith for State Farm to assign one adjuster to handle both the Liability Claim and UM Claim. Rather, Ms. Mason is asserting that the use of one adjuster resulted in an actual conflict of interest, that the conflict of interest deprived Ms. Mason of UM benefits which were due and owing to her, that the conflict of interest caused State Farm to assist its liability insured to the detriment of Ms. Mason, and that single adjuster practice resulted in unreasonable and unfair claims handling by State Farm with respect to Ms. Mason's UM claim.

In support of its contention that the single adjuster practice is reasonable and does not rise to the level of tortious conduct, State Farm relies upon the case of *Garnett v. Gov't Employees Ins. Co.* (GEICO), 2008 OK 43, 186 P.3d 935. However, not only is *Garnett* distinguishable from the instant case, it actually *supports* Ms. Mason's bad faith claim. In *Garnett*, the plaintiff alleged that the insurer engaged in "dual representation" – that the insurer's employee working the UM claim and the insurer's employee working the liability claim conferred and colluded, and thus prevented either from reaching a fair estimate of the value of the plaintiff's claims. *Id*. at 944-45. In analyzing the duty of an insurer who insures both parties involved in a car accident, the Oklahoma Supreme Court began by reiterating that in order to establish a bad faith claim, a party must show that the insurer engaged in unreasonable, bad faith conduct. *Id*. The Court went on to rely upon the teaching set forth in the case of *United States Automobile Ass'n v. Bult*, 183 S.W.3d 181 (Ky. Ct.

34

App. 2003) which involved an allegation the insurance company's use of one adjuster constituted bad faith. The Supreme Court quoted the Kentucky Court of Appeals as follows:

> ". . . [T]he existence of a mere potential for conflict does not suffice to meet the burden of proof (for bad faith). It was incumbent upon (the plaintiffs) to prove that (the insurance company) did in fact act improperly in handling their claims. The potential for mischief must be shown to have ripened into the reality of tortious conduct." *Id*.

From there, the Oklahoma Supreme Court ruled that the trial court in *Garnett* did not err in granting summary judgment to insurer on the issue of whether the insurer engaged in bad faith "dual representation" ***because the plaintiff had not shown something <u>more</u> than the potential for a conflict of interest created by the coincidence that the insurer happened to insure both parties to the wreck***. *Id*. at 944-45. (emphasis added). In sum, the Court ruled there was no evidence offered by the plaintiff in *Garnett* that the examiners unreasonably delayed settlement, sought to leverage one claim against the other, made any misrepresentations to the passenger, or otherwise engaged in any actions that could be reasonably perceived as tortious, and therefore summary judgment was proper. *Id*.

The facts in this case are distinguishable from *Garnett* (and *Bult*). <u>First</u>, unlike the plaintiffs in those cases, Ms. Mason is ***not*** claiming State Farm's single adjuster practice is, in and of itself, an act of bad faith. Rather, Ms. Mason argues that use of the single adjuster practice in Oklahoma puts the adjuster in a position in which he/she cannot meet the duties owed to an Oklahoma UM insured and cannot comply with Oklahoma law as it relates to the proper handling of Ms. Mason's UM Claim. <u>Second</u>, unlike in *Garnett*, in the instant case, although State Farm assigned different claim numbers to the UM Claim and

the Liability Claim, it only assigned ***one adjuster to handle both***. Under *Garnett*, the Court found there was a ***potential conflict of interest when the insurance company used <u>different</u> adjusters*** to handle the claim; surely, then, the practice of using ***one adjuster*** to handle two claims with competing duties and interests rises to the level of tortious conduct as opposed to just the "potential for mischief". <u>Third</u>, Ms. Mason has presented extensive evidence that ***State Farm did in fact improperly handle her UM Claim***.

As such, State Farm failed to act reasonably and fairly with Ms. Mason in meeting its contractual obligations to conduct a thorough, fair, and unbiased investigation, analysis, and evaluation of Ms. Mason's UM claim premised on the involvement of a phantom driver. Thus, at a minimum, there are genuine issues of material fact that preclude summary judgment on Ms. Mason's bad faith claim.

## IV.    Evidence in this case demonstrates that State Farm's conduct was illegitimate and unreasonable; thus, there is not a legitimate dispute.

State Farm contends a legitimate dispute exists as to whether Ms. Mason's UM claim based on the phantom driver was covered under the insurance policy and that State Farm relied on that legitimate dispute when it withheld payment from Ms. Mason. *See* Doc. 56 at pp. 33-36 (ECF page numbering). Again, however, State Farm's defenses in this case are limited to the actual reason it denied Ms. Mason's UM claim. *See* Motion to Strike, Doc. 82. Under Oklahoma law, when an insurer denies a claim based on the existence of a legitimate dispute, there can be no inference of bad faith. *See Bannister v. State Farm Mut. Auto Ins. Co.*, 692 F.3d 1117, 1127 (10th Cir.2012). "However, 'a legitimate dispute as to coverage will not act as an impenetrable shield against a valid claim of bad faith.'" *Id*.

36

(internal citation omitted). Thus, even where a legitimate dispute exists, a jury may still determine the existence of bad faith when the insured "produce[s] additional evidence of bad faith." *Bannister*, 692 F.3d at 1128; *see also*, *Shotts v. GEICO Gen. Ins. Co.*, 943 F.3d 1304, 1315 (10th Cir. 2019). Accordingly, even if there is a legitimate possible basis for a dispute as to coverage, a jury may decide the issue of bad faith if there is evidence that the insurer did not actually rely on that legitimate basis to deny coverage (and instead denied the claim for an illegitimate reason) or that the insurer failed to adequately investigate the claim. *Bannister*, 692 F.3d at 1128.

For example, in *Haberman v. The Hartford Insurance Group*, 443 F.3d 1257 (10th Cir. 2006), the issue identified by the insurer in its motion for summary judgment was whether plaintiff was an insured under the policy for purposes of underinsured motorist coverage; however, in its denial letter, the insurer stated that it denied the claim because plaintiff was not riding in a "covered vehicle" at the time of the accident. The court found that "the 'legitimate' reason for denying [plaintiff's] claim [was] different from the reason [plaintiff] was given;" therefore, it was appropriate for the district court to deny the insurer's motion for summary judgment on the bad faith claim. *Id*. at 1270-1271.

"[I]f there is conflicting evidence from which different inferences might be drawn regarding the reasonableness of an insurer's conduct, then ***what is reasonable is always to be determined by the trier of fact*** by consideration of the circumstances in each case." *McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981) (emphasis added). Thus, where a plaintiff presents evidence casting doubt on the insurer's alleged "good faith" justification for disputing the claim, a plaintiff can defeat summary judgment and

present her case to a jury. *McCoy v. Oklahoma Farm Bureau Mut. Ins. Co.*, 841 P.2d 568, 572 (Okla. 1992).

The only evidence State Farm provides for its purported "reasonable and legitimate" position is that Ms. Harrison was inconsistent in her assertion that a phantom driver caused or contributed to the November 4, 2015, accident between Ms. Mason and Ms. Harrison, that no other witness indicated the involvement of a phantom vehicle, and that there is no additional evidence (aside from Ms. Harrison's statements and testimony) that suggest a phantom vehicle was involved. *See* Doc. 56, at pp. 33-36 - ECF page numbering. The problem for State Farm though is that it did ***not*** document in its claim file any concerns regarding any alleged "inconsistencies" regarding Ms. Harrison's recitation of how the accident occurred. In fact, it adopted Harrison's position by acquiescing to put that defense in front of the jury. Moreover, it did ***not*** document in its claim file any alleged reliance on the "consistencies" pertaining to Ms. Mason's description of how the accident occurred. In fact, State Farm never spoke with Ms. Mason prior to making its liability decision in the UM Claim and did not review or consider Ms. Mason's deposition or trial testimony in making its decision to deny the UM Claim based on the phantom driver.

Furthermore, despite Ms. Harrison's indication from the start that a phantom driver was involved in causing the accident, and contrary to its own internal claim handling guidelines, State Farm did not obtain a recorded statement from Ms. Harrison prior to making its original liability decision in the Liability Claim. Moreover, despite having a question as to why Ms. Mason slammed on her brakes (as stated by Ms. Harrison), State Farm never answered that question (or reviewed the collision report), prior to making its

liability decision in the Liability Claim. In fact, State Farm performed no investigation whatsoever into the potential involvement of the phantom driver at any point during the life of Ms. Mason's UM Claim (or Liability Claim for that matter).

However, when State Farm learned during the course of the *Mason v. Harrison* litigation that Ms. Harrison had testified under oath that a phantom driver caused or contributed to the accident, State Farm reassessed its original liability decision for purposes of the Liability Claim (but not the UM Claim) and took a position that would benefit its liability insured – that a jury could potentially attribute 10% fault to the phantom driver. State Farm knew that its liability insured, Ms. Harrison, would defend herself against State Farm's UM insured, Ms. Mason, based on the involvement of a phantom driver – yet State Farm never considered how that same evidence impacted the UM Claim of Ms. Mason.

Once Ms. Mason presented a UM claim based on the phantom driver (no thanks to her UM insurer, of course), State Farm denied her claim based entirely on information gleaned from various court filings in the *Mason v. Harrison* case. In denying her UM claim, State Farm did not assert the claim was not covered by the policy, that its investigation and evaluation resulted in a finding that the phantom driver was not at fault (nor could it because it never undertook an investigation in this regard), did not assert that Ms. Harrison's "inconsistences" regarding the phantom driver were the basis of the denial, and did not assert that because Ms. Mason's testimony defeated her UM claim. Instead, State Farm argued solely that the *jury verdict* in *Mason v. Harrison* did not find that a phantom driver caused or contributed to the November 4, 2015 – nor could it as that question was not presented to the jury. When State Farm was presented with Ms. Mason's UM claim,

State Farm did not conduct any investigation (let alone one that was thorough, fair, and unbiased) into the role the phantom driver played in the accident – despite its obligation to do so as Ms. Mason's UM insurer. It did not go back and look at how State Farm itself had adopted the 10% apportionment defense and that the jury forewoman and another juror indicated that Ms. Mason needed to spend more time on that issue. These failures constitute evidence of bad faith. *Newport*, 11 P.3d at 195. Because State Farm's purported "legitimate" reasons for denying Ms. Mason's UM claim in its Motion for Summary Judgment are different than the reason Ms. Mason was given for State Farm's decision to deny her UM claim, State Farm's request for judgment as a matter of law must be denied.

## CONCLUSION

Under applicable Oklahoma bad faith law, "***if there is conflicting evidence from which different inferences might be drawn regarding the reasonableness of an insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact*** by consideration of the circumstances in each case." *McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981)(emphasis added). Because Ms. Mason has presented evidence casting doubt on State Farm's purported "good faith justification" for denying her UM claim premised on the phantom driver, Ms. Mason is entitled to present her case to the jury. *McCoy v. Oklahoma Farm Bureau Mut. Ins. Co.*, 841 P.2d 568 (Okla. 1992).

Respectfully submitted,

/s/ *Andrea R. Rust*
Simone Fulmer Gaus, OBA #17037
Harrison C. Lujan, OBA #30154
Jacob L. Rowe, OBA #21797
Andrea R. Rust, OBA #30422
Madison Botizan, OBA #34615
FULMER SILL PLLC
1101 N. Broadway Ave., Suite 102
Oklahoma City, OK  73103
Phone:  (405) 510-0077
Fax:  (800) 978-1345
Email:  sfulmer@fulmersill.com
          hlujan@fulmersill.com
          jrowe@fulmersill.com
          arust@fulmersill.com
          mbotizan@fulmersill.com
**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of September, 2022, I electronically transmitted the attached document to the Clerk of Court using the EFC System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Joseph T. Acquaviva, Jr.
Elizabeth A. Snowden
WILSON CAIN & ACQUAVIA
300 NW 13th Street, Suite 100
Oklahoma City, OK 73103
JTAcqua@wcalaw.com
beths@wcalaw.com

/s/ *Andrea R. Rust*

41