```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF OKLAHOMA
 2

    LYNETTE MASON,
 3


 4            Plaintiff,


 5   vs.                                  No. CIV-2020-1217-D


 6   STATE FARM MUTUAL AUTOMOBILE
     INSURANCE CO., d/b/a STATE
 7   FARM INSURANCE CO., a Foreign
     For-Profit Entity,
 8


 9            Defendant.


10
         VIDEOCONFERENCE DEPOSITION OF JONAH KENNEDY
11              TAKEN ON BEHALF OF THE PLAINTIFF
                  ON JUNE 2, 2022 AT 9:38 A.M.
12


13


14                       APPEARANCES


15   On behalf of the PLAINTIFF:
     Simone Fulmer Gaus
16   Andrea Rust
     FULMER SILL
17   1101 North Broadway, Suite 102
     Oklahoma City, Oklahoma   73103
18   405.510.0077
     sfulmer@fulmersill.com
19
     On behalf of the DEFENDANT:
20   Joseph T. Acquaviva, Jr.
     WILSON, CAIN & ACQUAVIVA
21   300 Northwest 13th Street, Suite 100
     Oklahoma City, Oklahoma   73103
22   405.236.2600
     jtacqua@aol.com
23


24


25   REPORTED BY:   Abby Rhodes, CSR, RPR
```

```
 1                      JONAH KENNEDY,
 2   being first duly sworn, was examined and testified as
 3   follows, to wit:
 4                    DIRECT EXAMINATION
 5   BY MS. SIMONE FULMER GAUS:
 6        Q    Good morning, Mr. Kennedy.  My name is
 7   Simone Fulmer and I represent Lynnette Mason in a
 8   lawsuit that has been filed against State Farm.
 9             Are you familiar with that lawsuit?
10        A    Yes, ma'am, I'm familiar with it.
11        Q    I'm sorry?
12        A    Yes, ma'am, I am familiar with it.
13        Q    Okay.  And it is my understanding that you
14   played a role in the handling of Ms. Mason's UM claim;
15   is that correct?
16        A    Yes, ma'am, I did play a little role in it.
17        Q    Okay.  And you said that you "played a
18   little role."
19             Can you tell me what you mean by that?
20        A    As my -- as it was early in my training or
21   in my employment with State Farm for injury, it was
22   under Brett Tyner's discretion of what I did.
23        Q    Okay.  And if I'm to understand you, because
24   you were newer at the job, Mr. Tyner was essentially
25   giving you assignments that you needed to fulfill on
```

```
 1   this claim?
 2        A    Yes, ma'am, that sounds about correct.
 3        Q    Okay.  Is it fair to say that all the
 4   decision making on this claim was made by Mr. Tyner?
 5        A    Yes, ma'am.
 6        Q    And so --
 7             MR. ACQUAVIVA:  Object to the form of the
 8   question.
 9        Q    (By Ms. Fulmer) -- is it fair to say that
10   the -- well, let's back up a moment.
11             There is a letter that was sent to
12   Ms. Mason's lawyer dated July 27th of 2020.
13             Are you familiar with that letter?
14        A    I am familiar with it, but can we take a
15   look at it?
16        Q    We will.
17             I'm just asking you if you're familiar with
18   the letter I'm talking about?
19        A    Yes, ma'am.
20        Q    Okay.  Is it fair to say that that letter
21   and the content of that letter was prepared by
22   Mr. Tyner?
23        A    Yes, he did prepare the letter, in my
24   review.
25        Q    Okay.  And any decisions that might be
```

 1    reflected in that letter were decisions made by
 2    someone other than yourself; is that fair?
 3         A    Yes, ma'am, that would be fair.  He did
 4    write that letter so he did make that decision.
 5         Q    Okay.  Other than that letter -- oh, let me
 6    again back up.
 7              You mailed that letter; is that fair?
 8         A    That's fair, yes, ma'am.
 9         Q    And you signed that letter; correct?
10         A    Yes, it does have my signature on it.
11         Q    Up until that date of July 27, 2020, had you
12    done anything actively to look into the issues that
13    that letter purported to address?
14              MR. ACQUAVIVA:  Object to the form of the
15    question.
16         Q    (By Ms. Fulmer) Do you understand my
17    question, Mr. Tyner?  I mean Kennedy.  I'm sorry.
18              MR. ACQUAVIVA:  This is Mr. Kennedy.
19              THE WITNESS:  Can -- can you repeat the
20    question again?
21         Q    (By Ms. Fulmer) Certainly.
22              Up to July 27, 2020, had you done any active
23    participation in coming up with the content that is
24    reflected in that July 27, 2020 letter?
25         A    I did not, no, ma'am.

**Professional Reporters**
800.376.1006
www.proreporters.com

 1   concerned your participation in the handling of that
 2   UM claim?
 3       A    Yes, ma'am.
 4       Q    We've spoken briefly about the July 27, 2020
 5   letter that you sent to Mr. Gass.
 6            Do you remember that letter?
 7       A    I do remember that letter.
 8       Q    Did Mr. Tyner share with you what he did in
 9   order to be able to prepare it?
10       A    He did not.
11       Q    So you don't know what investigation he
12   might have done in order to prepare that letter; is
13   that right?
14       A    The only, the only thing that I know he
15   reviewed is what I saw in the letter as well as the
16   file note.
17       Q    Okay.  If I'm to understand you, as far as
18   what Mr. Tyner would have done in order to prepare the
19   content of that letter, he would have only reviewed
20   those matters he mentions.
21            Is that -- do I understand you correctly?
22       A    Repeat the question, please.
23       Q    I'll try.
24            If I'm to understand your previous answer,
25   what Mr. Tyner did or what he reviewed or looked at in

```
 1   correct?
 2        A    Yes, that's my understanding of Mr. Gass'
 3   letter.
 4        Q    And the effect of the July 27, 2020 letter
 5   was to reject that claim for uninsured motorist
 6   benefits; true?
 7        A    Yes, ma'am, I would say that is.
 8        Q    Did you do anything to investigate the
 9   liability issue that underlay that UM claim?
10        A    No, ma'am, I did not.  The investigation was
11   completed before I was there.
12        Q    And based on your previous testimony, am I
13   correct to believe that when Mr. Tyner gives you this
14   letter, that you did not do anything independently to
15   go back and look at that liability issue?
16        A    Yes, ma'am, that is correct.
17        Q    Do you know why Mr. Tyner wanted you to be
18   the one who signed this July 27, 2020 letter that was
19   rejecting the claim for uninsured motorist benefits?
20        A    As the claim was assigned to me, I would --
21   from my understanding, it was a training opportunity
22   from him given my lack of experience.
23        Q    Can you describe for me what training
24   experience Mr. Tyner giving you this letter to send to
25   Mr. Gass provided to you?
```

```
 1   use it in every deposition.  I do all of mine that
 2   way.
 3        Q    (By Ms. Fulmer) So if we can look,
 4   Mr. Kennedy, at the letter, the first page of which
 5   you can see on your screen there.
 6             Can you see that all right?
 7        A    Yes, ma'am.
 8        Q    And do you need a chance to read this before
 9   we start talking about it real quick?
10        A    Yes, ma'am, I'll go ahead.
11             (Brief pause)
12             All right, ma'am.  I've read it.
13        Q    Okay.  And here's the next pages.
14             (Brief pause)
15        A    All right.  I've read it.
16        Q    Okay.  I'm going to go back to the first
17   page.  It's Bates No. SF192.
18             If you see, Mr. Kennedy, in that first
19   paragraph, the letter indicates that you have
20   "reviewed the Court's Pre-Trail Conference Order...the
21   Court's Jury Instructions... and the Court's Journal
22   Entry of judgment;" is that correct?
23        A    That's what it says, yes, ma'am.
24        Q    Did you personally review any of those items
25   before this letter was sent?
```

```
 1       A    No, ma'am, I did not.
 2       Q    And again, is this because Mr. Tyner had
 3  prepared this letter and asked you to send it under
 4  your signature?
 5       A    Yes, ma'am, as a training opportunity, I
 6  would say.
 7       Q    Did you participate in any telephone calls
 8  that Mr. Tyner may have had about this UM claim that
 9  was made by Mr. Gass in June of 2020?
10       A    No, ma'am, that's -- not that I can recall.
11       Q    Did you and Mr. Tyner discuss the issues
12  that were involved in Mr. Gass' assertion of a UM
13  claim after the verdict in Mason versus Harrison?
14       A    I believe we did speak about it, but I can't
15  really recall what was said exactly.
16       Q    Did you discuss the fact that someone who
17  has an uninsured motorist coverage with State Farm in
18  the state of Oklahoma may actually be able to claim
19  both an uninsured and an underinsured motorist claim
20  arising out of a single event?
21       A    I believe that's possible, yes.
22       Q    And you know, as you sit here today, that
23  someone does have that right if the circumstances bear
24  that out; correct?
25       A    If the circumstances align, yes, ma'am.
```