# Liability Coverage for Bodily Injury (BI)
# Uninsured Motorist - Bodily Injury (UM)
# Underinsured Motorist - Bodily Injury (UIM)

ACM
October 14, 2015

| | |
|---|---|
| I. | DETERMINING APPLICABLE COVERAGE(S) AND FAULT |
| II. | CONTACT GUIDELINES |
| III. | STATEMENTS |
| | A. Recording Telephone Calls: "Beep" Requirements |
| | B. Points to be Observed in Taking Statements |
| | C. Transcription of Statements |
| | D. Examinations Under Oath |
| | E. Pre-suit Court Reporter Statements |
| IV. | CURRENT VALUE FOCUSED FILE HANDLING |
| V. | BI/UM/UIM FILE REPORTING |
| | A. File Notes |
| | B. Coverage |
| | C. Evaluation |
| | D. Management Review |
| VI. | INSURANCE SERVICES OFFICE (ISO) CLAIM SEARCH DATABASE (BI INDEX) |
| VII. | INVESTIGATION OF BI/UM/UIM CLAIMANTS' ACTIVITIES |
| | A. Appropriate Surveillance |
| | B. Improper Surveillance |
| | C. Compliance |
| VIII. | FIRST RESPONDER CHARGES |
| IX. | DEFENSE ATTORNEYS |
| X. | LIEN LAWS - ATTORNEYS, DOCTORS, AND HOSPITALS |
| XI. | MEDICARE - COORDINATION OF BENEFITS |
| XII. | ERISA QUALIFIED PLANS SUBROGATION RIGHTS |
| XIII. | TIME LIMIT DEMAND |
| XIV. | DEMANDS EQUAL TO OR IN EXCESS OF POLICY LIMITS |
| XV. | CONTRIBUTION |
| XVI. | BI/PD OVERLAPPING COVERAGE - AUTO AND OTHER PROPERTY & CASUALTY POLICIES |
| XVII. | WAGES OR SALARY REIMBURSEMENT |
| XVIII. | BONDS |
| XIX. | FEDERAL TORT CLAIMS ACT |
| | A. Handling Guidelines for Claim Representatives |
| XX. | RELEASES AND FORMS OF SETTLEMENT |
| | A. General Release |
| | B. Covenant Not to Sue |
| | C. Recorded Releases |
| | D  Agreement and Release (BI) |
| | E.  Expense Advances: Using Receipt for Expense Advance |
| | F. No Release - Using Claim Limitation Notice |
| XXI. | SETTLEMENT OF CLAIMS WITH MINORS |
| | A. Settlement of Minor's Claim without Court Approval |

**EXHIBIT 20**

    B.   Settlement with Court Approval

# I. Determining Applicable Coverage(s) and Fault

After verifying there is a policy in force and before initiating the investigation of any bodily injury (BI), uninsured motorist bodily injury (UM), or underinsured motorist bodily injury (UIM) claim, determine which Coverages apply. There may be more than one Coverage that applies. The claim specialist must understand the provisions of the applicable policies of insurance, particularly the policy contract under which the claim is being investigated. Discuss with the team manager any theory for recovery under the contract that is being presented even when it is believed there is no coverage or coverage does not apply.

After determining which Coverages apply, it is the claim specialist's duty to investigate liability (fault). The liability investigation should answer the following questions:

1. Was the insured negligent?
2. Was the claimant negligent?
3. Were any other parties negligent?
4. If the insured was negligent, was the degree (percentage) of negligence such that the insured is liable under the law?
5. If the insured was negligent, was the claimant contributory or comparatively negligent? What facts support that conclusion?
6. Does joint and several liability apply?
7. Are there defenses that will reduce or bar damages (comparative fault, seatbelt laws, helmet laws, parent-child immunity, etc.)?

When investigating a claim, attention should be given to such issues as proximate cause, unavoidable accidents, sudden incapacitation and latent defects.

# II. Contact Guidelines

Same day contact with the insured and all claimants is recommended. Same day is defined as the date on which the claim was received by the assigned claim handler. Initial and prompt follow-up contact with all appropriate parties should be made.

# III. Statements

Statements provide a record of the facts of the accident. Statements may also refresh the memory of a witness if he or she is called to testify about the accident months or years after its occurrence.

Obtain statements of insureds, claimants, and witnesses at the earliest possible time while memories are still fresh. If a party refuses to give a statement, document the refusal in file notes.

A negative statement is one in which a potential witness denies having seen a particular event. In some cases, it may be important to secure a statement from those persons who were or may have been in a position to have seen what occurred, but deny any knowledge.

Statements are also used to develop the investigation and record the facts regarding coverage questions. Statements concerning coverage questions and policy defenses should be taken separate and apart from the statements regarding liability and damages. These statements should not be secured until a non-waiver is obtained or reservation of rights is delivered. A non-waiver may be obtained via recorded statement.

SEE: ACM-Investigation of Coverage Questions

## A. Recording Telephone Calls: "Beep" Requirements

Various federal and state statutes, and regulations may apply in situations where State Farm® wishes to record a telephone conversation. To comply with these laws, the following is recommended:

1. Obtain consent from all parties to the conversation before recording the conversation. Obtaining all-party consent will assure compliance with any applicable statutes and regulations.

Mason, Lynnette v. SFMAIC, et. al.
Case 5:20-cv-01217-D   Document 84-20   Filed 09/26/22   Page 3 of 6

2. Consult Corporate Law before commencing any recording program from any State Farm location to determine which intrastate phone carrier (and intrastate carrier requirements) will be involved in the recorded phone call. Intrastate carriers may require use of an automatic tone (beep tone) warning device when telephone calls are being recorded. Some (but not all) of these carriers, however, permit all-party consent as an alternative to the beep tone device. When the applicable carrier does not permit the all-party consent alternative, State Farm should employ a beep tone device, as well as obtain an all-party consent to comply with applicable statutes.

In recording phone conversations, follow standard claims procedures for recording oral statements, including obtaining the consent of the person whose statement is being recorded at the beginning and end of the conversation.

## B. Points to be observed in Taking Statements

Secure recorded question and answer statements in face-to-face interviews or by telephone. Properly identify the interviewer, the interviewee, and the date of the interview. Secure the interviewee's consent that the recording is made and attestation to the truth of the facts recorded.

SEE: Auto Call Library

- Recorded Statement - Disinterested Witness

After permission to record the statement is obtained, the interviewer should identify the transaction as follows:

```
This is (name) interviewing (name) at (address) on (date of statement),
concerning an accident that occurred at (date and place of accident).
```

This introduction should be followed by two key questions:

1. Mr./Ms. (name) will you please state your full name?

2. Is this recording being made with your full knowledge and consent?

```
The recording should close with the following three additional key questions(and answers):
```

1. Mr./Ms. (name) do you wish to add anything?

2. Are the remarks made in this recording your true version to the best of your knowledge?

3. Has this recording been made with your full knowledge and consent?

A statement should be complete, clear, and arranged in the order of events. It must contain all pertinent facts known to the interviewee about which he or she may be expected to testify in the event of litigation. If the interviewee has no knowledge of a pertinent fact, this also should be reflected in the statement. Carefully listen to the responses and ask follow-up questions to fully develop the interviewee's statement.

The content of any statement should be patterned to meet the needs of the individual claim. The points covered may vary depending on whether the witness is an insured, claimant, driver, passenger, pedestrian, bystander, or a person in some other status. An outline is useful for both written and oral statements.

1. Description of interviewee

    a. Name.

    b. Age, sex, marital status. (If a minor claimant, obtain date of birth and name and address of parents or guardian.)

    c. Residence address and telephone number(s).

    d. Occupation, and name and address of employer. (If an injured participant, specify job duties and physical activity required by the job.)

    e. Length of employment.

    f. Obtain the name and address of a permanent resident, a relative or close friend; if a minor, the parents' names and addresses; ID for military personnel; or other information that will aid in the location of the interviewee at a future date.

MASON00000017PROD

    g.    Prescription lenses and physical impairment, if applicable.

2.    Identification of accident

    a.    Date, time of day, day of week.

    b.    Place of accident. Intersection or distance from intersection.

    c.    Kind of accident.

        1)    Collision between vehicles.

        2)    Collision between vehicles and fixed object, or upset.

        3)    Collision between vehicles and pedestrian.

    d.    Parties involved; names of drivers, passengers, and pedestrians.

    e.    Location of attesting interviewee:

        1)    Pedestrian.

        Name of street; side of street in terms of points of the compass; landmarks; direction moving in terms of compass; where coming from; destination; and with whom.

        2)    Occupant of vehicle.

        Which vehicle (make, model, year of vehicle, and color of vehicle), names of other occupants, and where sitting.

        3)    Occupant of building.

        Location of building (name of street, side of street, distance from accident and scene in feet and in points of compass), and location of interviewee in the building. Develop why he or she happened to be there.

    f.    Purpose of trip (if party).
        1)    When and where trip began.
        2)    Destination.
        3)    In the course of employment.
        4)    Acting on behalf of another person.

    g.    Pertinent events leading up to accident. Route of travel, deviations, speeds, lights on or off, vehicle performance, condition of car, and visibility.

    h.    Notice of any distractions in the vehicle.

        1)    Cellular phone usage

        2)    Texting

        3)    Eating or drinking (coffee, soda, etc.)

        4)    Use of electronic devices (laptop, Ipad, GPS, etc.)

        5)    Personal grooming

        6)    Use of radio or other music device.

3.    Description of accident scene:

    a.    Weather.

    b.    Condition of street (wet, dry, snow, ice, paved, unpaved).

    c.    Streets or highways involved.

          1)    Width of street / number of lanes.

          2)    Grade of street involved.

          3)    Traffic light and traffic control signs.

          4)    Speed limit.

    d.    Buildings and other fixed objects.

          1)    Location of all buildings at intersection that may affect evidence as to relative distance and obstruction of view.

          2)    Location of light and utility poles, trees, sidewalks, parked vehicles, etc.

          3)    Describe lighting conditions if accident occurred after dark, or if lighting was a factor in loss.

4.    Detailed facts of accident.

    a.    Location of interviewee when he or she first observed any vehicle or person that later became involved in the accident.

    b.    Location of vehicle(s) or pedestrian when first observed.

    c.    At what point was danger of impending accident first noted; locations of vehicles and persons at this point.

          1)    Include direction of travel and location with reference to fixed objects.

          2)    Include occurrence or sound that called attention of the interviewee to other vehicle or person. Address lookout.

    d.    Speeds. Record interviewee's initial observation of the speeds of all vehicles or persons involved in the accident. Include basis on which interviewee determines his knowledge of speed.

    e.    Evasive action by parties to accident.

          1)    What each driver, operator, or other person did to avoid the accident after danger was first recognized.

          2)    After first observation, what each principal did (was observed to do) all with reference to some fixed object or place if possible. Subsequent movements, positions, speeds, distances in feet, speeds in mph, and direction relative to compass points.

    f.    Point of impact.

          1)    On the vehicles.

          2)    On the street, highway, or other location (as observed or known by interviewee).

    g.    Where vehicles and persons came to rest.

          1)    Trace movement of vehicles or persons after impact; direction, speeds.

          2)    Final resting place regarding fixed objects and vehicles overturned.

    h.    Skid marks and debris.

          1)    Exact location regarding fixed objects and reference points.

          2)    Length, size, shape, and type (gouge marks, oil, water, parts of cars, etc.).

    i.    Admission

          1)    Any statements made by any principals including who made them; when they were

            made; and in whose presence they were made.

        2)    What the interviewee knows with reference to the intoxication or impairment of any involved party. Is this knowledge based on observation of drinking, odor, actions, etc.

        3)    Interviewee's relationship with any of the involved parties. Determine the nature and extent of the relationship, and whether the interviewee was acquainted before the accident.

        4)    Police investigation including name of officer, badge number, what witness said to officer.

    j.    Defects in vehicles involved.

        1)    Turn signal, lights, brakes, glass, tires, etc.

        2)    Obstructions of view such as frost or dirt on windshield, etc.

5.    Bodily Injuries

    a.    What the interviewee knows or observed concerning the extent of any injuries.

    b.    If the interviewee is an occupant of any vehicle involved, ask if this person was injured and if injured, the nature and extent of the injuries. If the interviewee is a potential injured party:

        1)    Include history of any previous injuries or illnesses that might have been aggravated by the accident. Include names of doctors, hospitals, others who might have knowledge of such previous diseases.

        2)    Name and address of treating physician. Name and address of hospital, if applicable. If x-rays or other diagnostic tests were taken, where and by whom.

        3)    What portion of body struck or was struck by the motor vehicle.

        4)    Occupation. Gross and net wages, commission or salary, time off to date, prognosis for return to work, and other related information.

        5)    Social obligations, household duties, or hobbies that may have been impacted by injury.

6.    Property Damage

    a.    In general, parts of vehicles damaged and nature thereof.

    b.    Other objects or property damaged.

7.    Ask the interviewee if he or she is aware of any witnesses to the accident.

8.    In situations where the handwritten statement is being obtained in person, use the following attestation (for verification of written statements): "I have read these (number) pages and they are true."

    When a statement has more than one page, number the pages and have the witness sign each page to avoid allegations that a page was substituted after the statement was taken. It is recommended the witness write the attestation followed by the signature.

## C. Transcription of Statements

Recorded statements should be recapped when taken and should not routinely be transcribed. When the recorded statement is pertinent to the issue for which the claim is being submitted to P&C Claims, the statement should be transcribed and custom grouped.

## D. Examinations Under Oath

Some coverages of the policy provide for the right of the Company to obtain an examination under oath (EUO). If an EUO becomes necessary for the investigation of a claim, consult the law applicable to the jurisdiction and the applicable policy language (both the policy booklet and any pertinent endorsement) to determine if an EUO is a duty of the insured under the