IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LYNNETTE MASON      )<br>                             )<br>    Plaintiff,            )<br>                             )     Case No. CIV-20-1217-D<br>    v.                       )<br>                             )<br>STATE FARM MUTUAL            )<br>AUTOMOBILE INSURANCE         )<br>CO., d/b/a STATE FARM        )<br>INSURANCE CO.,               )<br>a Foreign For-Profit entity  )<br>                             )<br>    Defendant.               ) | |

## ORDER

Before the Court is Defendant State Farm Mutual Automobile Insurance Company's Second Motion for Summary Judgment [Doc. No. 56]. Plaintiff Lynette Mason responded in opposition [Doc. No. 84], and Defendant replied [Doc. No. 87]. The matter is fully briefed and at issue.

### *Background*

Plaintiff asserts a breach of the duty of good faith and fair dealing claim against Defendant.[1] Plaintiff's claim arises out of an accident that occurred in November of 2015, in which she was rear-ended by a vehicle driven by non-party Lyndee Harrison. At the time of the collision, both Plaintiff and Ms. Harrison were insured by Defendant. After the

---

[1] Although the parties' Joint Status Report indicates that Plaintiff is also bringing a breach of contract claim, Plaintiff maintains that this was in error and in fact, Plaintiff only intends to bring a bad faith claim. Accordingly, this Order only addresses Plaintiff's bad faith claim.

accident, Plaintiff filed a bodily injury liability claim against Ms. Harrison's insurance policy. The claim did not settle, and Plaintiff sued Ms. Harrison in the District Court of Cleveland County ("*Mason I*"). The case was tried to a jury verdict which was returned in favor of Ms. Harrison.

After the defense verdict in *Mason I*, Plaintiff sought payment for uninsured motorist benefits under her policy. Defendant denied Plaintiff's claim, and this lawsuit followed. Defendant seeks summary judgment in its favor with respect to Plaintiff's bad faith claim, arguing that Plaintiff is not legally entitled to recover under her policy. Alternatively, Defendant argues that it had a reasonable, good faith belief for withholding payment and that its investigation was reasonable and adequate.

### ***Standard of Decision***

Summary judgment is proper "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.* If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, then all other factual issues regarding the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Id.* at 322-23. If the movant carries this

burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); *see Adler*, 144 F.3d at 672. The court's inquiry is whether the facts and evidence of record present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## *Undisputed Facts*

The parties have set forth an abundance of facts. The Court, however, finds that only a few facts are material to the disposition of Defendant's motion and that genuine issues of material fact exist.

Ms. Harrison rear-ended Plaintiff on November 4, 2015, in Moore, Oklahoma. After speaking with Ms. Harrison, Defendant obtained a "loss report" which states in part: "[Ms. Harrison] exited on 12th St. and Moore, 2 cars in front of [Ms. Harrison], 1 vehicle made a left into a neighborhood, the car behind the other locked brakes and [Ms. Harrison] hit [Plaintiff]." Def.'s Mot. Summ. J., Ex. 10 at 2.

A claim was initiated and assigned claim number 36-7L60-727. Within the claim file, an entry dated November 11, 2015, states that Ms. Harrison "indicated another [vehicle] ahead of [Plaintiff] slammed on their brakes causing [Plaintiff] to stop suddenly

3

and [Ms. Harrison] [rear-ended] them." *Id.*, Ex. 12 at 4. It appears that the claim file adopted the version of the accident set forth in the "loss report," as the claim file states: "Final: [Ms. Harrison] exited on 12th St. and Moore, 2 cars in front of [Ms. Harrison], 1 vehicle made a left into a neighborhood, the car behind the other locked brakes and [Ms. Harrison] hit [Plaintiff]." *Id.* at 2. Ultimately, Defendant assigned liability to Ms. Harrison for the accident.

On January 3, 2017, Plaintiff's attorney[2] asked Defendant to make substitute payment of Plaintiff's underinsured motorist benefits of $25,000.[3] This request was noted in a separate claim file. *See* Pl.'s Resp., Ex. 1 at 5. On January 11, 2017, Defendant informed Plaintiff's attorney that the value of Plaintiff's claim did not exceed the underlying available liability coverage under Ms. Harrison's policy. Accordingly, Defendant denied Plaintiff's underinsured motorist claim.

Plaintiff and Defendant were unable to settle Plaintiff's claim under Ms. Harrison's policy, and Plaintiff filed suit against Ms. Harrison in the District Court of Cleveland County, alleging negligence and negligence *per se*. Leading up to trial, Ms. Harrison testified:

> I just remember the vehicle in front of me, a vehicle in front of them cut over to make a left-handed turn on a side street. I am assuming that's the side street. I don't know what the name of it was, but they were trying to, and the oncoming traffic was coming so fast, the person in front of me tried to lock up.

---

[2] Any references to "Plaintiff's attorney" refer to Plaintiff's attorney in *Mason I*, Andrew Gass.
[3] Plaintiff's request for substitute payment was based on Plaintiff's belief that the amount requested exceeded the limits set forth by Ms. Harrison's policy.

Def.'s Mot. Summ. J., Ex. 6 at 2.

The liability claim file incorporates this testimony in an entry dated September 18, 2018, which states: "Original liability was not in dispute; however, during insured's deposition, she blamed a phantom vehicle for pulling out in front of plaintiff causing the plaintiff to slam on her brakes and defendant to slam on her brakes. [Ms. Harrison's attorney][4] believes at trial we could potentially get a liability percentage set off." Pl.'s Resp., Ex. 4 at 17. As of September 20, 2018, the facts of loss in the liability claim file read: "Insured alleges a vehicle cut in front of [Plaintiff] and caused the accident. Defense will point to the phantom vehicle as a defense which may get some [percentage] of fault apportioned away from the insured." *Id.* at 15.

In September of 2019, *Mason I* was tried to a jury verdict in Cleveland County. The liability claim file summarizes portions of the trial and describes Ms. Harrison's testimony as follows: "She stated a [third] vehicle pulled from her right and cut in front of the [Plaintiff's] vehicle causing the [Plaintiff] to stop suddenly and [Ms. Harrison] was unable to stop and hit [Plaintiff]." *Id.* at 4. Plaintiff testified that she was stopped for at least six seconds prior to being struck from behind. The jury returned a verdict in favor of Ms. Harrison and awarded Plaintiff no damages.

In June of 2020, Plaintiff's attorney sought payment from Defendant for Plaintiff's

---

[4] In *Mason I*, Ms. Harrison was represented by attorney Michael Chitwood. Mr. Chitwood is a State Farm employee and a member of its "Claims Litigation Counsel," but is not a member of State Farm's claims team.

uninsured motorist benefits,[5] alleging that "[t]he explanation for the defense verdict is 'the driver of the [phantom] third vehicle' referred to by [Ms.] Harrison." Def.'s Mot. Summ. J., Ex. 7 at 1. Although the liability claim file states that Ms. Harrison's attorney spoke with two jurors who "thought that Plaintiff should have spent more time on who was at fault for loss," Defendant denied the request for uninsured motorist benefits after concluding that nothing in the jury's verdict "suggest[ed] that there was a phantom driver/vehicle that caused or contributed to the happening of this accident." *Id.*, Ex. 4 at 3; Ex. 8 at 2.

## *Discussion*

Defendant moves for summary judgment with respect to Plaintiff's bad faith claim. Under Oklahoma law, an insurer has an implied duty to deal fairly and act in good faith toward its insured, and the violation of that duty gives rise to an action in tort. *Christian v. Am. Home Assurance Co.*, 577 P.2d 899, 904 (Okla. 1977). To succeed on a bad faith claim, a plaintiff must prove four elements: "(1) claimant was entitled to coverage under the insurance policy at issue; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury." *Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 724 (Okla. 2009).

First, Defendant argues that it is entitled to judgment as a matter of law because

---

[5] The parties do not dispute that if an unknown phantom driver/vehicle caused or contributed to the accident, Plaintiff would be entitled to uninsured motorist coverage under her policy. *See* Pl.'s Resp., Ex. 5 at 21.

Plaintiff is not legally entitled to recover under her policy. It claims that, because Plaintiff cannot prove the existence of a phantom driver/vehicle, she cannot recover uninsured motorist benefits under her policy. Thus, Defendant argues, Plaintiff cannot prevail on her bad faith claim as a matter of law.

Upon consideration of the summary judgment record, viewed in the light most favorable to Plaintiff, the Court finds that a genuine dispute of material fact exists as to whether Plaintiff is legally entitled to recover under her policy. Prior to Plaintiff's request for uninsured motorist benefits in June of 2020, Defendant—as evidenced through numerous entries in the claim file—was aware that a phantom driver/vehicle potentially contributed to the collision. *See, e.g.,* Def.'s Mot. Summ. J., Ex. 12 at 2 (the claim file's February 26, 2016, entry remarking that "[Ms. Harrison] exited on 12th St. and Moore, 2 cars in front of [Ms. Harrison], 1 vehicle made a left into a neighborhood, the car behind the other locked brakes and [Ms. Harrison] hit [Plaintiff]"); Pl.'s Resp., Ex. 4 at 17 (the claim file's September 18, 2018, entry stating that, although "[o]riginal liability was not in dispute, . . . during [Ms. Harrison's] deposition, she blamed a phantom vehicle for pulling out in front of plaintiff causing the plaintiff to slam on her brakes and defendant to slam on her brakes. [Defendant's attorney] believes at trial we could potentially get a liability percentage set off"); *id.* at 15 (the claim file's September 20, 2018, entry noting that "[Ms. Harrison] alleges a vehicle cut in front of [Plaintiff] and caused the accident. Defense will point to the phantom vehicle as a defense which may get some [percentage] of fault apportioned away from the insured").

And indeed, it appears that this theory was presented at the *Mason I* trial. *See id.* at

7

4 (according to the claim file, Ms. Harrison testified at trial that "a [third] vehicle pulled from her right and cut in front of the [Plaintiff's] vehicle causing the [Plaintiff] to stop suddenly and [she] was unable to stop and hit [Plaintiff]"). Because the current record is replete with signs that a phantom driver/vehicle may have existed, the Court is unable to conclude that Plaintiff is not legally entitled to recover uninsured motorist benefits under her policy.

Next, the Court addresses Defendant's alternative arguments that it had a reasonable, good faith belief for withholding payment and that its investigation was reasonable and adequate. Although an insurer does not act in bad faith by disagreeing with an insured regarding coverage or the amount of loss, "when presented with a claim by its insured, an insurer 'must conduct an investigation reasonably appropriate under the circumstances' and 'the claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient.'" *Newport v. USAA*, 11 P.3d 190, 195 (Okla. 2000) (quoting *Manis v. Hartford Fire Ins. Co.*, 681 P3d 760, 762 (Okla. 1984)); *Christian*, 577 P.2d at 905. Importantly, "if there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case." *McCorkle v. Great Atl. Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981). The insurer's actions "must be assessed in light of all facts known or knowable concerning the claim at the time the insured requested the insurer to perform its contractual obligation." *Timberlake Const. Co. v. U.S. Fidelity & Guar. Co.*, 71 F.3d 335, 340 (10th Cir. 1995) (internal quotation and alterations omitted).

After receiving an unfavorable jury verdict, Plaintiff requested uninsured motorist benefits under her policy, which requires Defendant to "pay compensatory damages for bodily injury an insured is legally entitled to recover from the owner or driver of an uninsured motor vehicle." *See* Pl.'s Resp., Ex. 25 at 28. Identifying the phantom driver/vehicle theory as the reason for the defense verdict, Plaintiff requested these benefits because a phantom driver/vehicle is considered an "uninsured motor vehicle" under her policy.[6] *Id.*

Defendant denied Plaintiff's request. Although Defendant generally alleges that it based its decision on "the information learned before *Mason I*, during *Mason I*, and during this litigation" the letter denying Plaintiff's claim states, *inter alia*, that (1) it "do[es] not find anything in the jury's verdict to suggest that there was a phantom driver/vehicle that caused or contributed to the happening of this accident;" and (2) it "do[es] not believe the jury's verdict support[s] [Plaintiff's] conclusion or [Plaintiff's] claim for payment" under the uninsured motorist coverage. Def.'s Mot. Summ. J. at 25; *id*, Ex. 8 at 1.

According to the record, Defendant was well aware of the possibility that a phantom driver/vehicle contributed to the accident and that, after the trial in *Mason I*, multiple jurors were unclear regarding "who was at fault for the loss." *Id.*, Ex. 4 at 3, Indeed, Defendant's claim file explicitly notes that while "[o]riginal liability was not in dispute," Ms. Harrison's deposition—in which she blamed a phantom driver/vehicle for pulling out in front of

---

[6] As noted, the parties do not dispute that Plaintiff is entitled to uninsured motorist benefits under her policy if an unknown phantom driver/vehicle caused or contributed to the accident. *See* Pl.'s Resp., Ex. 5 at 21.

9

Plaintiff—may allow Defendant to "get a liability percentage set off" at trial. Pl.'s Resp., Ex. 4 at 17. Under the current record, it is unclear what specific actions Defendant undertook, at any point, to determine whether Plaintiff was entitled to uninsured motorist benefits under her policy due to the involvement of a phantom driver/vehicle.

Viewing the facts in the light most favorable to Plaintiff, there exists "conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct." *McCorkle*, 637 P.2d at 587. Accordingly, Defendant's reasonableness must be "determined by the trier of fact by a consideration of the circumstances in [the] case." *Id.* On the current record, the Court cannot conclude that this issue is "so one-sided that one party must prevail as a matter of law," *Anderson*, 477 U.S. at 251-52, and thus the Court must deny Defendant's motion for summary judgment with regard to Plaintiff's bad faith claim.

### *Conclusion*

For the reasons set forth herein, Defendant's Second Motion for Summary Judgment [Doc. No. 56] is **DENIED**.

**IT IS SO ORDERED** this 16th day of December, 2022.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge